*In re* LUIS LAMBERTY GONZÁLEZ, querellado.

*Número:* O-84-118    *Resuelto:* 27 de abril de 1984

*Rosa Negrón de Quiñones, Procuradora General Auxiliar,* abogada de El Pueblo; *Luis Lamberty González, pro se.*

PER CURIAM: En virtud de querella formulada por el Procurador General contra el abogado Lcdo. Luis Lamberty González el 16 de febrero de 1984 se le imputaron los siguientes hechos:

> El abogado Luis Lamberty González actuando como notario público incurrió en conducta ilegal e impropia al firmar en sustitución de otra persona, Luis Pérez Lavison, como comprador de un apartamento en el Condominio Dos Marinas localizado en el Municipio de Fajardo, Puerto Rico, la escritura número nueve, Compraventa reconociendo hipoteca, el 10 de julio de 1979 otorgada ante él.

El querellado admitió estos hechos mediante escrito presentado ante este Tribunal el 9 de marzo de 1984. Sus explicaciones nos mueven a imponerle, como única sanción, su separación del ejercicio del notariado y el apercibimiento de que cualquier futura infracción de la ética profesional podrá merecer la más severa acción disciplinaria.

Resumimos a continuación los hechos relevantes y pertinentes al cargo imputado, según surge del escrito del querellado. Desde 1978 ha habido una relación profesional de abogado-cliente entre el querellado y el Sr. Luis Pérez Lavison, ciudadano panameño que ha residido indistintamente en Los Ángeles, California, y en Puerto Rico. Surgió para el señor Pérez Lavison la oportunidad de comprar un apartamento en el Condominio Dos Marinas en Fajardo, que interesaba para vivir con su compañera cuando estuviese en Puerto Rico. Sus constantes viajes a Miami e Islas Bahamas le obligaban a ausentarse de Puerto Rico con frecuencia y, para no perder la oportunidad de adquirir el apartamento, le entregó $2,800 al querellado para que "asegurara la compraventa" pagando con ese dinero parte del pronto pago exigido de $4,000. El balance se pagaría al otorgarse la escritura de compraventa. El señor Pérez Lavison estaba, además, en trámites de obtener la ciudadanía de Estados Unidos y dejar el trabajo que le requería viajar constantemente.

El querellado preparó la escritura y a la semana recibió el balance para el pronto pago ($1,200), de manos de la compañera de Pérez Lavison. El vendedor presionó para que se otorgara la escritura y amenazó vender la propiedad a otro comprador. Pérez Lavison se encontraba en Los Ángeles. Informado por teléfono de esta situación y ante su imposibilidad de trasladarse a Puerto Rico y la inminencia de perder el negocio, le pidió al querellado que firmara por él.

Nos dice el querellado:

Yo sabía que el firmar por el señor Pérez aun cuando él me había autorizado verbalmente era un acto incorrecto, pero pensé que habría alguna forma de legalizar o corregir mi actuación posteriormente. En el momento que accedí a firmar por él no guió mi mente ninguna intención de fraude, ni de causar daño a persona alguna. Sólo me guió el impulso de ayudar al cliente a no perder la compraventa del apartamento que le interesaba adquirir en ese momento. Después de firmar por el señor Pérez comienzo a arrepentirme de dicho acto y lo

más que pude hacer era rogar al Todopoderoso que nunca ocurriera nada que pudiera convertir un acto de rapidez de mi parte en una experiencia traumática que pusiera en juego el ejercicio de mi profesión. Nunca pensé que un acto incorrecto de segundos me colocara en la posición de temer perder mi única forma de sostén y que los trece (13) años de ejercer mi profesión con el máximo de cumplimiento con el deber, dedicación y esmero puedan borrarse con un plumazo. Les digo esto pues lo que más temía ocurrió. El señor Pérez, al cabo de varias visitas a Puerto Rico, decidió retener su actual empleo y su interés en el apartamento cesó al extremo que fue demandado posteriormente por falta de pago.

Más adelante dice el querellado:

Comprendo la seriedad de mi acto y lo que significa violar un canon y la Ley Notarial. Solamente les digo que estoy muy arrepentido desde el momento que cometí tal estupidez. He ejercido la profesión durante los pasados trece (13) años y es mi único medio de ingresos. Actualmente tengo pendiente cerca de veinticinco (25) casos criminales donde los acusados han depositado toda su confianza en mi buen juicio. Estos acusados han desembolsado parte o la totalidad de los honorarios pactados y sus casos de naturaleza criminal penden de juicio. Soy padre de cinco (5) hijos y paso una pensión alimenticia de $1,200.00 mensuales.

Si el Honorable Tribunal tomara acción disciplinaria más allá del ejercicio de la notaría, ocasionaría un daño económico irreparable, pues tendría que devolver miles de dólares a clientes de casos criminales.

Yo puedo asegurarle que el error cometido por este abogado no se repetirá jamás, pues reconozco el valor que tiene mi profesión.

Le ruego al Honorable Tribunal que cualquier medida disciplinaria se limite al ejercicio de la notaría, pues comprendo que mi error no puede pasarse por alto. Agradezco a Dios que mi error no causó daños irreparables y que ha hecho de este servidor un abogado más diligente y consciente de sus deberes ante la ley.

Este acto de contrición del querellado, que parece salir de lo profundo de una conciencia sana, perturbada por la irreflexión de un momento en que pesó más para él el deseo

de resolver la necesidad de su cliente que su obligación de respetar la ética de su profesión, no excusaría de ordinario imponer la más severa sanción disciplinaria. Pero atendida su actitud de aceptar buenamente la falta cometida, más el hecho de que no se causó perjuicio a persona alguna y que este incidente le mueve a un genuino arrepentimiento.y a un sincero propósito de enmienda, bastará por ahora para que nos limitemos a decretar su *separación permanente del ejercicio del notariado, apercibiéndole de que cualquier comportamiento suyo futuro reñido con la ética profesional podrá merecer nuestra más severa sanción disciplinaria como abogado.*