*In re* CARMEN AMPARO RÍOS RIVERA.

*Número:* AB-85-12     *Resuelto:* 17 de noviembre de 1987

*Iván F. Fuster, Procurador General Auxiliar*, abogado de El Pueblo; *Carmen Amparo Ríos Rivera, pro se.*

PER CURIAM: Mediante la escritura pública Núm. 6 de 8 de abril de 1982, otorgada ante la notario Carmen Amparo Ríos Rivera, el Lcdo. Ricardo Calderón Rodríguez le vendió a su sobrina Raquel Rosario una finca de treinta y cinco cuerdas —sita en el Barrio Beatriz de Cayey, Puerto Rico— por el precio de $35,000. De la referida suma de dinero confesó el vendedor haber recibido, con anterioridad al otorgamiento, la cantidad de $5,000. En cuanto a la restante suma de dinero, la compradora otorgó —en el mismo acto— una hipoteca en garantía de un pagaré hipotecario al portador por la suma de $30,000.

El 7 de marzo de 1985, mediante la escritura pública Núm. 4 otorgada ante el notario Félix Colón Morera, doña Raquel Rosario le vendió la antes mencionada finca de treinta y cinco cuerdas al Lcdo. Miguel Ramón Calderón Rivera y su esposa Ángeles Ortiz Mercado. En la cláusula 2 de la referida escritura pública Núm. 4 se hizo constar que:

SEGUNDA:— Realízase esta venta por el convenido y ajustado precio de TREINTA Y SEIS MIL DOLARES ($36,000.00) en moneda de curso legal de los Estados Unidos de América, de los cuales informa "LA VENDEDORA" haber recibido la suma de SEIS MIL DOLARES ($6,000.00) en este acto y el balance, o sea, la suma de TREINTA MIL DOLARES ($30,000.00) para el pago en su día de la hipoteca que por dicha suma grava la propiedad en garantía de pagaré al portador, cuyos términos manifiestan "LOS COMPRA-DORES", conocer y se comprometen a cumplir fielmente con los mismos hasta su saldo total. (*Exhibit* XIII, pág. 146.)

El Lcdo. Miguel Ramón Calderón Rivera y su esposa Ángeles Ortiz Mercado —haciendo constar que eran los tenedores del pagaré hipotecario al portador por la suma

de $30,000— cancelaron la hipoteca que gravaba la mencionada finca mediante la otorgación, el 9 de abril de 1985, de la escritura pública Núm. 42 ante el notario Carlos Irizarry Vázquez.

Mediante declaración jurada de 18 de junio de 1985, la Srta. Raquel Rosario se querelló ante este Tribunal. En la misma expuso que la escritura otorgada el 8 de abril de 1982 por la notario Ríos Rivera no refleja la verdadera naturaleza de la transacción efectuada entre ella y su tío, el licenciado Calderón Rodríguez, por cuanto a pesar de que el precio de venta efectivamente había sido la suma de $35,000, la hipoteca en garantía del pagaré hipotecario al portador debió ser únicamente por la suma de $10,000 ya que ella le había adelantado al licenciado Calderón Rodríguez la cantidad de $25,000 con anterioridad al otorgamiento de la escritura. En segundo lugar, alegó la señorita Rosario que ella nunca le había vendido su propiedad al Lcdo. Miguel R. Calderón Rivera y su esposa Ángeles Ortiz Mercado y que ni conocía ni había firmado escritura alguna ante el notario Félix Colón Morera.

Referimos dicha queja al Procurador General de Puerto Rico con instrucciones de que realizara una investigación sobre los hechos alegados por la señorita Rosario y rindiera un informe sobre ello al Tribunal. En el informe que rindiera el Procurador, éste expresó que las alegaciones de la señorita Rosario respecto a la escritura otorgada el 8 de abril de 1982 por la notario Ríos Rivera carecen de mérito. Nos informó, sin embargo, que la investigación realizada demostró que los abogados Ríos Rivera, Calderón Rodríguez y Calderón Rivera incurrieron en conducta violativa del Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, ello en relación con el otorgamiento de la escritura Núm. 4, de 7 de marzo de 1985, otorgada ante el notario Félix Colón Morera. En cuanto a este último, informó el Procurador que su conducta —al autorizar la referida escritura

Núm. 4— constituye una violación a la fe pública notarial establecida por las disposiciones de la Sec. 16 de la Ley Notarial, entonces vigente, 4 L.P.R.A. sec. 1016.

Examinado el informe del Procurador General, le concedimos término a los Lcdos. Ricardo Calderón Rodríguez, Miguel R. Calderón Rivera, Carmen Amparo Ríos Rivera y Félix A. Colón Morera para mostrar causa por la cual no debían ser disciplinados. Han comparecido. Resolvemos.

I

De la evidencia que acompañó el Procurador General al informe que nos rindiera y de la comparecencia de los mencionados abogados surgen como hechos incontrovertidos que la Srta. Raquel Rosario no firmó en presencia del abogado notario Félix Colón Morera la escritura Núm. 4 de 7 de marzo de 1985 y que el referido notario autorizó dicha escritura a instancia y solicitud del Lcdo. Miguel Calderón Rivera y de la Lcda. Carmen Amparo Ríos Rivera.

Las circunstancias que rodearon dicha actuación surgen, a nuestro entender, con palpable claridad de la comparecencia ante este Tribunal del abogado-notario Félix Colón Morera. Expresa en la misma el referido abogado, en lo pertinente, lo siguiente:

> Desde que me inicié en la práctica profesional entablé estrecha amistad con la Lcda. Carmen Amparo Ríos Rivera. La veo muy a menudo en las áreas comunes del edificio donde tenemos las oficinas, o de camino al Centro Judicial de San Juan, que queda muy cerca. Tambi[é]n la he visitado en su oficina, que comparte con su hermano el Lic. Miguel R. Calderón Rivera. He admirado sus dotes como profesional y como persona que posee grandes sentimientos de solidaridad humana. La he conocido siempre como una digna profesional, incansable contra la injusticia, celosa del cumplimiento de sus obligaciones con los tribunales y con sus clientes, esforzada en dar lo máximo de sí para rendir una labor profesional de altura.

Me llamó la atención su predilección por los asuntos de derecho notarial y registral.

.      .      .      .      .      .      .

*La Lcda. Ríos Rivera me indicó que habría de otorgarse una escritura a favor de su hermano Miguel,* sin especificar el momento exacto en que se haría, en la que deseaba mi actuación como Notario. Esto sucedió unos días antes del 7 de marzo de 1985.

*El 7 de marzo de 1985 ella se presentó a mi oficina en horas de la tarde con el Lic. Miguel R. Calderón Rivera y la esposa de éste,* Sra. [Á]ngeles Ortiz de Calderón. *Traía una escritura redactada y previamente firmada por una parte. Me indicó que* la firma, de Raquel Rosario Robledo, era legítima, pues ella la había comparado con una que la Srta. Raquel Rosario Robledo había estampado en una escritura previamente otorgada ante ella como Notario. *Según mi mejor recuerdo la Lcda. Ríos Rivera me mostró en ese momento* copia fotostática de dicha escritura previa, de la que surgía la identidad de la firma y de las iniciales de la Srta. Raquel Rosario Robledo.

*Se me explicó por ambos abogados, la Lcda. Ríos Rivera y el Lic. Calderón Rivera,* que el documento representaba una transacción mediante la cual el Lic. Miguel R. Calderón Rivera recibía una propiedad como pago de honorarios profesionales prestados por él al Lic. Ricardo Calderón Rodríguez. Que la Srta. Raquel Rosario Robledo poseía la propiedad como "testaferro" de este último, para que no pudiera ser objeto de embargo por unos acreedores del Lic. Ricardo Calderón Rodríguez. *El Lic. Miguel R. Calderón Rivera me indicó que* esa mañana el Lic. Ricardo Calderón Rodríguez le había pedido que lo acompañara a tomar la firma de la Srta. Raquel Rosario Robledo ya que ésta no podía trasladarse a la oficina como habían previsto. Que habían ido juntos al rededor [*sic*] del medio día de ese día a tomar la firma de la Srta. Raquel Rosario Robledo, y que ella había suscrito el documento en presencia de ambos en su residencia en Caguas.

Mi reacción inicial fue de asombro y sentí que debía rechazar de plano la solicitud. *No conocía a la Srta. Raquel Rosario Robledo y al Lic. Ricardo Calderón Rodríguez sólo como cliente y pariente del Lic. Miguel R. Calderón Rivera.* Consideré que debía trasladarme donde la Srta. Raquel Rosario Robledo,

*m[a]s el Lic. Miguel R. Calderón Rodríguez me explicó que* se trataba de un barrio de Caguas, Cañaboncito, al que él había sido llevado por primera vez ese día y que no era fácil llegar hasta allí. *Me indicó que* acababa de almorzar con el Lic. Ricardo Calderón Rodríguez después de firmar los documentos y que existía total armonía entre ambos por la transacción efectuada. *Enfatizó que* la Srta. Raquel Rosario Robledo no había puesto objeción alguna a la transacción porque estaba consiente [*sic*] que la propiedad pertenecía al Lic. Ricardo Calderón Rodríguez, y había suscrito el documento por instrucciones de éste, en presencia de ambos, y de otras personas que se encontraban en la residencia de la Srta. Raquel Rosario Robledo, y con conocimiento de que en dicho documento se entregaba la propiedad al Lic. Miguel R. Calderón Rivera como pago de servicios profesionales prestados al Lic. Calderón Rodríguez.

En mis años de práctica notarial, a[u]n con la estrecha amistad y solidaridad que he sentido hacia la Lcda. Carmen Amparo Ríos Rivera, nunca me había hecho un pedido semejante. *Jamás en mi práctica notarial se me había presentado la situación que me exponían los dos abogados.* La cortesía entre ambas oficinas para otorgar documentos notariales nunca implicó la relajación del requisito de comparecencia personal del otorgante. Ello era requerido tanto por la Lcda. Ríos Rivera como por mí, y precisamente en el cumplimiento fiel de la ley ha descansado la confianza y el respeto mutuo como compañeros de profesión.

*En esta ocasión de 7 de marzo de 1985 me pareció inverosímil la solicitud que se me hacía.* Tomé el documento y lo leí superficialmente y observé que estaba completo en sus requisitos formales, aunque no hice juicio crítico sobre el contenido del mismo. *Tras un instante de reflexión, y con gran aprehensión y temor, quedé avasallado con las garantías que me ofrecieron [los licenciados] Calderón Rivera y Ríos Rivera de que se trataba de una transacción de buena fe entre parientes,* que había sobrevenido una dificultad real e imprevista para que la Srta. Raquel Rosario Robledo se trasladara a otorgar la escritura a la oficina del Lic. Miguel R. Calderón Rivera, que los otorgantes se conocían perfectamente entre sí, que la naturaleza del acto estaba plenamente

informada entre ellos y que era lo que realmente querían. Procedí a tomar la firma del Lic. Miguel R. Calderón Rivera y de su esposa Angeles Ortiz de Calderón, bajo la de la Srta. Raquel Rosario Robledo y suscribí al fondo la mía. *Bajo el más solemne juramento revelo al Honorable Tribunal Supremo que este es un único e insólito caso en la vida profesional de este Notario, y que jamás habrá de repetirse.* (Énfasis suplido.) Comparecencia del Lcdo. Félix Colón Morera, págs. 2-4.

■ No hay duda que el licenciado Colón Morera al así actuar infringió la citada Sec. 16 de la Ley Notarial entonces vigente en Puerto Rico. Considerando las circunstancias presentes en el caso(1), y el genuino arrepentimiento que demuestra tener, *In re Lamberty González*, 115 D.P.R. 352 (1984), estimamos procedente sancionarlo únicamente como notario. Se decreta su suspensión del ejercicio de la notaría en Puerto Rico por un término de dos años.

■ Las actuaciones de los licenciados Calderón Rivera y Ríos Rivera definitivamente constituyen una violación del Canon 38 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. *Cf. In re Franco Soto*, 115 D.P.R. 740 (1984). Independientemente de sus alegaciones a los efectos de que todo este incidente es el producto de las maquinaciones del Lcdo. Ricardo Calderón Rodríguez e independientemente de lo sucedido el 7 de marzo de 1985, día en que se le tomó la firma a la Srta. Raquel Rosario, y de las personas que allí estuvieron presentes, lo cierto es que ellos indujeron y convencieron —*conducta que admiten en sus comparecencias*— al licenciado Colón Morera a que incurriera en una violación de la Ley Notarial. Se decreta la suspensión del

---

(1) El licenciado Colón Morera no percibió honorarios de clase alguna por la autorización de dicha escritura. Su actuación aparenta ser la de un abogado joven, quizás inexperto e ingenuo, con deseos de ayudar a resolverle un problema a un compañero abogado.

ejercicio de la profesión de abogado de la Lcda. Carmen Amparo Ríos Rivera por un período de seis meses. Se suspende igualmente al Lcdo. Miguel Calderón Rivera del ejercicio de la abogacía por un período de un año.

## II

Del expediente no surge con claridad y precisión la participación que tuviera el Lcdo. Ricardo Calderón Rodríguez en la autorización por el notario Colón Morera de la escritura en controversia. La evidencia aportada en cuanto a ello resulta ser contradictoria en parte e incompleta en otros respectos. La falta de claridad y precisión se debe primordialmente a que la investigación que realizara el Procurador General de Puerto Rico tuvo como objetivo principal la investigación de la queja presentada por la Srta. Raquel Rosario contra la Lcda. Carmen Amparo Ríos Rivera. *Se instruye al Procurador General de Puerto Rico para que amplíe la investigación realizada específicamente en relación con el Lcdo. Ricardo Calderón Rodríguez y nos someta el correspondiente informe, para lo cual se le concede el término de noventa (90) días.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Ortiz se inhibió.