*In re* Luis R. Torres Olmeda.

*Número:* AB-97-102          *Resuelto:* 23 de abril de 1998

385

*Carlos Lugo Fiol, Procurador General, Edda Serrano Blasini, Subprocuradora General, e Yvonne Casanova Pelosi, Pro-*

*curadora General Auxiliar*, en informe; *Fabiola Fernández Chávez*, abogada del querellado.

PER CURIAM:

## I

Mediante una carta de 16 de mayo de 1995, compareció la Sra. Ana C. Alemañy ante el Secretario de Justicia de Puerto Rico en representación de la Corporación para el Financiamiento de la Vivienda en Puerto Rico (en adelante la C.F.V.P.R.), a los efectos de presentar una queja contra el Lcdo. Luis R. Torres Olmeda. El Secretario de Justicia refirió el asunto a la Oficina del Procurador General de Puerto Rico, quien procedió a informar al licenciado Torres Olmeda de la queja presentada y a requerirle que expusiera su posición con respecto a los asuntos planteados.

El 27 de junio de 1995 el querellado escribió una carta a la Lcda. Delmarie Vega Lugo, Procuradora General Auxiliar, para exponer su posición. Posteriormente, el 2 de mayo de 1996 el licenciado Torres Olmeda compareció de nuevo el ante el Procurador General.

El 5 de agosto de 1997 el Procurador General presentó ante este Tribunal su informe sobre la queja presentada. Mediante Resolución de 9 de octubre de 1997, le concedimos al licenciado Torres Olmeda un término para que mostrara causa por la cual no debíamos separarlo indefinidamente del ejercicio de la abogacía.

Luego de varias prórrogas, el licenciado Torres Olmeda presentó una réplica al Informe del Procurador General el 23 de enero de 1998.

El 3 de febrero de 1998 el Procurador General compareció ante nos mediante una "Dúplica" a la réplica del querellado. A la luz de las comparecencias del Procurador General y del licenciado Torres Olmeda, y de nuestra Resolución de 9 de octubre de 1997, procedemos a resolver.

## II

La C.F.V.P.R. es una subdivisión del Banco Guberna-
mental de Fomento. Dicha corporación le concedió a la So-
ciedad Asmy, S.F. (en adelante Asmy) un préstamo por la
cantidad de setecientos treinta y cuatro mil cuatrocientos
dólares ($734,400) para la construcción de un edificio de
veinte (20) apartamentos. Para garantizar el préstamo, se
constituyó una primera hipoteca y se firmaron acuerdos
que contenían las condiciones según las cuales se concedía
dicho financiamiento. Entre estos acuerdos había una esti-
pulación a los efectos de que las unidades tenían que ven-
derse a los precios convenidos en los documentos del
préstamo.

En marzo de 1994 Asmy comenzó a vender los aparta-
mentos, actuando el licenciado Torres Olmeda como nota-
rio otorgante de los contratos de compraventa. La
C.F.V.P.R. recibió prontamente los pagos relacionados con
las liberaciones parciales de las hipotecas otorgadas, pero
no las escrituras de liberación correspondientes. No fue
hasta el 8 de noviembre de 1994 que el notario autorizante,
licenciado Torres Olmeda, le envió a la C.F.V.P.R. las die-
ciocho (18) escrituras de compraventa y liberación de hipo-
teca para su firma.

Al cotejar las escrituras, la señora Alemañy se percató
de que los precios de compraventa eran más altos que los
aprobados por la C.F.V.P.R. Por tal motivo, la quejosa no
firmó siete (7) de las dieciocho (18) escrituras sometidas
para su firma, enterándose en ese momento de que el licen-
ciado Torres Olmeda había expedido copias certificadas de
las escrituras sin contar con la firma de la C.F.V.P.R. en las
escrituras originales. Las copias certificadas expedidas
fueron presentadas por el licenciado Torres Olmeda al Re-
gistro de la Propiedad para su inscripción. En dichas co-
pias certificadas el notario expresó falsamente que en los

originales protocolizados constaban las firmas e iniciales de las partes otorgantes.

En su comparecencia ante el Procurador General y en respuesta a las alegaciones de la señora Alemañy, el licenciado Torres Olmeda señaló que el aumento de precios era una controversia contractual que tendría que dilucidarse entre Asmy y la C.F.V.P.R. En cuanto a lo relacionado con la expedición de las copias certificadas de las escrituras, a las cuales les faltaba la firma de una de las partes contratantes, éste indicó lo siguiente:

> ... la copia certificada de la escritura de compraventa se adelantó con la anuencia y la autorización de la Sra. Ana Carmen Alemañy manifestada por conducto de su asesora legal la Lcda. Caroll Cabañas al aceptar como correcto y cierto el pago de la liberación de la unidad vendida y tener ésta pleno conocimiento de su expedición.[1]

El Procurador General, luego de estudiar las contenciones tanto de la queja como de las respuestas del licenciado Torres Olmeda, presentó un informe ante este Tribunal con fecha de 5 de agosto de 1997. En él sostiene que éste incurrió en conducta constitutiva de violación a la Ley Notarial de Puerto Rico, toda vez que cuando se otorga un instrumento público el notario tiene que recibir las firmas de los comparecientes dentro del mismo día natural del otorgamiento.

Concluyó el Procurador General, además, que la conducta del notario del epígrafe al expedir copias certificadas de escrituras, a cuyos originales les faltaba la firma de uno de los comparecientes, constituyó una crasa violación a los Arts. 28 y 39 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. secs. 2046 y 2061,[2] a la Regla 49 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, y a los Cánones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

---

[1] Carta del licenciado Torres Olmeda de 27 de junio de 1995. Anejo 2 al Informe del Procurador General.

[2] Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*).

El 9 de octubre de 1997 este Tribunal emitió la resolución antes mencionada, en la cual le concedió al licenciado Torres Olmeda el término de quince (15) días para que mostrara causa por la cual no se le debería separar indefinidamente del ejercicio de la abogacía. Luego de solicitar varias prórrogas para cumplir, las cuales le fueron concedidas, el 23 de enero de 1998 el licenciado Torres Olmeda presentó un escrito titulado "Réplica y Solicitud de Desestimación del Informe del Procurador General y/o Paralización de los Procedimientos". Sostuvo que la controversia sobre las escrituras debe resolverse en un proceso judicial plenario. Informa haber presentado una demanda contra el Banco Gubernamental de Fomento, su Presidente (el Sr. Marcos Rodríguez Ema), la Sra. Ana Carmen Alemañy Calderón, la C.F.V.P.R. y varios de sus empleados, en la cual reclamó por los daños sufridos por él y los titulares de las propiedades y solicitó el reconocimiento por parte de la demandada de las "Liberaciones de Hipotecas". Además, solicitó que paralicemos el procedimiento disciplinario hasta tanto se resuelva la demanda presentada y/o que declaremos la querella no ha lugar.

El 3 de febrero de 1998 compareció el Procurador General mediante un escrito titulado "Dúplica". Sostiene que el expediente ante nos es claro y que de él surgen las omisiones y deficiencias notariales señaladas en su informe. Se opone a la paralización del procedimiento disciplinario debido a que nada tiene que ver la demanda con las faltas imputadas y porque ésta no procede en derecho.

## III

El Art. 28 de la Ley Notarial de Puerto Rico, *supra*, requiere que en el otorgamiento de un instrumento público en el que no hubiese testigos, o si éstos fuesen de conocimiento, el notario reciba las firmas de los comparecientes dentro del mismo día natural del otorgamiento. Sin

embargo, cuando comparecen testigos instrumentales es necesaria la unidad de acto en el otorgamiento.(³)

De la exposición fáctica anterior surge que el licenciado Torres Olmeda faltó a este deber que le impone la ley, ya que, a pesar de que de las escrituras aludidas constan fechas de otorgamiento que se extienden desde el 25 de marzo de 1994 hasta el 22 de septiembre del mismo año, no fue hasta el 8 de noviembre de 1994 cuando la representante de la C.F.V.P.R. firmó once (11) de éstas, y las otras siete (7) aún no han sido firmadas.

El Art. 39 de la Ley Notarial de Puerto Rico, *supra*, dispone, además, que:

> Una copia certificada es el traslado literal, total o parcial, de un documento otorgado ante notario, que libre éste o el que tenga legalmente a su cargo su protocolo, con certificación respecto a la exactitud del contenido y al número de folios que contenga el documento, así como la firma, signo, sello y rúbrica y, en todos los folios, el sello y rúbrica del notario autorizante.

■ En lo referente a dicho artículo, la Regla 49 del Reglamento Notarial de Puerto Rico, *supra*, regula las formalidades que se deberán cumplir para que una copia certificada de un instrumento constituya un título perfecto. En lo pertinente, dicha regla dispone lo siguiente:

> ... (c) La certificación de una copia expresará que en el original aparecen:
> (1) las firmas e iniciales de los comparecientes. 4 L.P.R.A. Ap. XXIV, R. 49.

■ Al expedir una copia certificada de algún instrumento público, el notario expresa que en el original protocolizado constan ciertos datos, entre los que se encuentran las firmas e iniciales de los comparecientes. Al momento de expedir las copias certificadas de las escrituras que son objeto de la presente queja aún *faltaba la firma de una de*

---

(³) Véase la Regla 35 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV.

*las partes en todas las escrituras.* Además, las copias certificadas de dichas escrituras fueron presentadas posteriormente en el Registro de la Propiedad para su correspondiente inscripción, como si las originales hubieran sido firmadas. Dicha conducta es constitutiva de una crasa violación al Art. 39 de la Ley Notarial de Puerto Rico, *supra,* y a la Regla 49 del Reglamento Notarial de Puerto Rico, *supra.*

Habiendo examinado el expediente, concurrimos con el Procurador General a los efectos de que

> *... no existe evidencia de que haya habido de parte del notario de epígrafe intención fraudulenta alguna al efectuar el cambio de valor que habían acordado tanto C.F.V.P.R. como ASMY, S.E. en que se vendieron las propiedades envueltas. Analizada la argumentación de las partes en este caso, es nuestra opinión que aunque no surge dicha intención fraudulenta subsiste una controversia legítima sobre la facultad que tenía o no ASMY y el notario de epígrafe para efectuar dicho cambio, la cual a nuestro entender podría adjudicarse en su día en nuestros tribunales.*
>
> Por otro lado, del análisis de la prueba surgen unos hechos sobre los que no existe controversia alguna y los cuales indudablemente inciden sobre disposiciones y obligaciones impuestas por la Ley Notarial de Puerto Rico a todos los Notarios.[4]

■ Un notario puede corregir, mediante un acta de subsanación, errores u omisiones de una escritura que no afecten el negocio jurídico llevado a cabo en ésta. Si dichos errores afectan el negocio jurídico, el notario tendrá que otorgar una escritura de rectificación con la comparecencia de las partes. Arts. 29–32 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. secs. 2047–2050.

■ El argumento esbozado por el notario a los efectos de que contaba con la anuencia de la Sra. Ana Carmen Alemañy para adelantar las copias certificadas es, a todas luces, improcedente. La obligación de la gestión notarial es de carácter personal, indivisible e indelegable, de completa

---

[4] Informe del Procurador General, pág. 4.

responsabilidad del notario autorizante. *In re Laboy*, 113 D.P.R. 476 (1982). La alegada anuencia de una parte, aún si se hubiera obtenido, no puede constituir base para el incumplimiento de los deberes que la ley le impone a los notarios. Repetidamente hemos advertido a los notarios de su obligación de cumplir estrictamente con lo preceptuado en la Ley Notarial de Puerto Rico. *In re Vargas Hernández*, 135 D.P.R. 603 (1994).

## IV

Los actos en que incurrió el licenciado Torres Olmeda son, además, constitutivos de violación a los Cánones 35 y 38 del Código de Ética Profesional, *supra.*

El Canon 35 del Código de Ética Profesional, *supra*, exige al abogado ejercer su profesión con sinceridad y honradez, así como conducirse de manera digna y honorable, tanto en su función de abogacía como en su función notarial.

Es menester recordar que "[e]l notario es un profesional del Derecho que ejerce una función pública para robustecer, con una presunción de verdad, los actos en que interviene, para colaborar en la formación correcta del negocio jurídico y para solemnizar y dar forma legal a los negocios jurídicos privados". (Énfasis suprimido.) E. Giménez Arnau, *Introducción al Der. Notarial*, Madrid, Ed. Rev. Der. Privado, 1944, pág. 44. La notaría es una función de cuidado que debe ser ejercida con suma diligencia y celo profesional. *In re Cruz Ramos*, 127 D.P.R. 1005 (1991); *In re Rodríguez Mena*, 126 D.P.R. 205 (1990); *In re Vergne Torres*, 121 D.P.R. 500 (1988). En el ejercicio de esta función, el notario está obligado a cumplir estrictamente con la Ley Notarial de Puerto Rico, los cánones del Código de Ética Profesional y el contrato entre las partes. La inobservancia de esta obligación demuestra una indiferencia que constituye una violación a las normas éticas que rigen la

profesión legal(⁵) y expone al notario a la acción disciplinaria correspondiente. *In re Rodríguez Báez*, 129 D.P.R. 819 (1992); *In re Bringas Rechani*, 128 D.P.R. 132 (1991). Es obligación de los abogados, como de los notarios, conocer y cumplir a cabalidad las disposiciones legales que regulan el ejercicio de su profesión, así como la doctrina y jurisprudencia. *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986).

▮ Reiteradamente hemos resuelto que un notario que falta a la veracidad de los hechos incurre en una de las faltas más graves que éste puede cometer, ya que la certificación de un hecho falso constituye un acto detrimental a la fe pública. *In re Vera Vélez*, 136 D.P.R. 284 (1994); *In re Peña Clos*, 135 D.P.R. 590 (1994). "La fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental". *In re González González*, 119 D.P.R. 496, 499 (1987). Véase *In re Feliciano Ruiz*, supra. La ausencia de la firma de uno de los comparecientes es causa de nulidad del instrumento e implica, a su vez, una violación a la fe pública notarial. *In re Platón*, 113 D.P.R. 273 (1982).

El Canon 38 del Código de Ética Profesional, *supra*, exige de los abogados que se esfuercen al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión. Otorgar un documento notarial en violación de la Ley Notarial de Puerto Rico constituye una violación a este precepto ético. *In re Ríos Rivera*, 119 D.P.R. 586 (1987); *In re Del Río Rivera y Otero Fernández*, 118˙D.P.R. 339 (1987).

Por todo lo expuesto, resolvemos que el licenciado Torres Olmeda infringió las disposiciones de la Ley Notarial de Puerto Rico y los Cánones 35 y 38 del Código de Ética Profesional de Puerto Rico, *supra*, en cuanto exigen que

---

(⁵) Véanse: *In re Nieves Rivera*, 124 D.P.R. 803 (1989); *In re Santiago González*, 121 D.P.R. 580 (1988).

todo abogado actúe con honestidad y sinceridad en su gestión profesional y mantenga el honor y la dignidad de la profesión legal.

*Se dictará sentencia mediante la cual se separe indefinidamente al abogado-notario Luis R. Torres Olmeda del ejercicio de la notaría.*