

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re: <br><br><br> Ángel M. Rosado Nieves | 2013 TSPR 92 <br><br> 189 DPR ____ |

Número del Caso: CP-2011-4

Fecha: 10 de julio de 2013

Abogada del Querellado:

      Lcda. Sariely Rosado Fernández

Oficina del Procurador General:

      Lcda. Tatiana Grajales Torruella
      Sub Procuradora General

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar

Materia: Conducta Profesional – La suspensión del abogado del ejercicio de la notaría será efectiva el 7 de agosto de 2013 fecha en que se le notificó al abogado de su suspensión inmediata al ejercicio de la notaría.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ángel M. Rosado Nieves          CP-2011-04

PER CURIAM

En San Juan, Puerto Rico, a 10 de julio de 2013.

Una de las faltas más graves en que puede incurrir un notario es ser infiel a la veracidad de los hechos que describe en los documentos públicos que otorga. In re Belén Trujillo, 184 D.P.R. 793, 802 (2012); In re Montalvo Guzmán, 164 D.P.R. 806, 811 (2005); In re Torres Olmeda, 145 D.P.R. 384, 393 (1998). Las actuaciones del Lcdo. Ángel M. Rosado Nieves demuestran que violó las garantías de la fe pública notarial que dio en varios documentos públicos y revelan que faltó a su deber de sinceridad y honradez. Por ello, determinamos suspenderle indefinidamente de la práctica de la

notaría.

I

El presente caso contra el Lcdo. Ángel M. Rosado Nieves surge a raíz de una queja que presentaron las hermanas Valentina y Carmen Lydia Carrión Príncipe el 10 de marzo de 2006. En su queja señalan que el Tribunal de Primera Instancia declaró nulo un testamento de su padre, el Sr. Alfredo Carrión Cordero, como consecuencia de las actuaciones del notario, quien lo otorgó el 24 de mayo de 1989. Además, advirtieron que el foro primario reconoció que una declaración jurada de 5 de junio de 1989 también vulneró la fe pública notarial. Por último, le imputaron asumir la representación legal de su madre, Carmen Príncipe Negrón, en una demanda el 17 de septiembre de 1991, a pesar de que el notario sabía que estaba incapacitada para administrar sus bienes.

La principal defensa del licenciado Rosado Nieves, quien respondió a la queja el 22 de mayo de 2006, fue que el tiempo transcurrido entre los hechos imputados y la queja lo ubica en un estado de indefensión. Subraya el abogado, admitido a la práctica de la abogacía el 10 de enero de 1986 y al de la notaría el 4 de marzo de 1986, que el retraso en presentar la queja no tiene justificación. En cuanto a los hechos, reconoció que otorgó el testamento pero aseguró que se realizó acorde las circunstancias que en él se describen y que recogía el sentir del testador. Las quejosas ripostaron con otro

documento, de 3 de agosto de 2007, en que rechazaron que el testamento en disputa recogiera el sentir del testador.

La Oficina de Inspección de Notarías (ODIN) rindió un informe el 28 de abril de 2010 en que recomendó la imposición de una sanción disciplinaria al Lcdo. Rosado Nieves. En su informe, ODIN describe varios documentos que ponen en duda la fe pública notarial que dio el querellado, entre otras denuncias de las quejosas.

El señalamiento principal versa sobre el segundo testamento que otorgó el señor Carrión Cordero, que el Tribunal de Primera Instancia declaró nulo el 19 de diciembre de 1995. En detalle, el 25 de abril de 1989 el señor Carrión Cordero otorgó su primer testamento abierto ante el licenciado Rosado Nieves. En él instituyó como herederos a sus cuatro hijos por partes iguales en cuanto a la legítima estricta y el tercio de libre disposición. El tercio de mejora lo heredó a su hija Evelyn Carrión Príncipe. Además, el testador expresó su deseo de que una residencia se le cediera a su esposa, la Sra. Carmen Príncipe Negrón, como hogar seguro.

El segundo testamento se otorgó un mes después, el 24 de mayo de 1989, y alteró la disposición de los bienes. En este, sólo el tercio de legítima estricta se dividiría en partes iguales entre sus cuatro hijos reconocidos. El tercio de mejora lo dividió entre la Sra. Evelyn Carrión Príncipe, a quien también designó como albacea testamentaria, y uno de sus nietos. El tercio de libre

disposición lo heredó a su hijo Alfredo Carrión Príncipe. Así, el segundo testamento eliminó la participación de las quejosas en el tercio de libre disposición.

El Tribunal de Primera Instancia declaró nulo el segundo testamento luego de que las quejosas instaran una demanda. Concluyó que el notario mintió en la dación de fe de la unidad de acto pues, de acuerdo a la sucesión de hechos que construyó con los testimonios vertidos durante el juicio, era imposible que el testador acudiera al otorgamiento el día y la hora señalados. La prueba desfilada demostró que el testador se encontraba enfermo en su casa, que su vehículo lo había prestado a una de sus hijas y que ninguna de las personas que usualmente lo transportaban estuvo disponible a la hora del otorgamiento. Las respuestas y el demeanor que exhibió el licenciado Rosado Nieves durante el juicio, entre otras cosas, no persuadieron al Tribunal. Esa sentencia no se apeló, por lo que advino final y firme.

Además del testamento anulado, la ODIN señaló el Testimonio Núm. 918 de 5 de junio de 1989, que suscribió la Sra. Valentina Carrión Príncipe. En él reconoció que adeudaba $18,000 a su padre. El 5 de octubre de 1991, la Sra. Valentina Carrión Príncipe prestó una nueva declaración jurada que rechazó que la previa se hubiera firmado frente al licenciado Rosado Nieves. Detalló que fue su padre quien le pidió que firmara el documento, que ya contenía la firma y el sello del letrado. Al respecto,

la ODIN recogió la impresión del Tribunal de Primera Instancia en el sentido de que el licenciado Rosado Nieves no rebatió adecuadamente esa imputación durante el juicio sobre la nulidad del testamento.

La ODIN también evaluó la Escritura Núm. 14 sobre Dación en Pago de 24 de abril de 1989. En ese documento, el señor Carrión Cordero afirmó ser el dueño privativo de un terreno en Loíza que dio a sus hijos Alfredo y Evelyn Carrión Príncipe, hermanos de las quejosas, como pago por servicios prestados. Sin embargo, del expediente surge que al momento del otorgamiento el terreno era ganancial, contrario a lo que afirmaron todos los comparecientes. No consta que se haya realizado un estudio de título. Finalmente, ese negocio jurídico se dejó sin efecto un mes después, mediante la Escritura Núm. 16 de 23 de mayo de 1989. La ODIN se abstuvo de hacer una determinación de conducta impropia en cuanto a esta situación.

Otra situación que evaluó la ODIN se relaciona con la solicitud para que se declarase incapaz a la Sra. Carmen Príncipe, viuda del testador. El 3 de septiembre de 1991, la Sra. Carmen Lydia Carrión Príncipe presentó ante el Tribunal de Primera Instancia una Petición de Determinación de Incapacidad y Nombramiento de Tutor para su madre. Sus hermanos Alfredo y Evelyn Carrión Príncipe, a través de su abogado, el licenciado Rosado Nieves, pidieron intervenir en ese procedimiento el 24 de septiembre de 1991. En su intervención, aceptaron que la

Sra. Carmen Príncipe Negrón no estaba capacitada para administrar sus bienes. Sin embargo, siete días antes, el 17 de septiembre de 1991, el licenciado había instado una demanda en representación de la señora Príncipe Negrón, sus hijos Alfredo y Evelyn Carrión Príncipe, y uno de sus nietos. Para ese momento, no existía una declaración formal de incapacidad en cuanto a la señora Príncipe Negrón, por lo que la ODIN tampoco hizo señalamiento en esa instancia.

El 1 de septiembre de 2010 referimos el caso a la Oficina del Procurador General para que presentara la querella correspondiente, lo que sucedió el 31 de marzo de 2011. El Procurador desglosó las imputaciones en tres cargos. El primero de ellos por violar el Art. 2 de la Ley Notarial, Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2002, por faltar a la fe pública notarial. El segundo cargo imputa una violación del Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, sobre sinceridad y honradez. El tercer cargo imputa una violación del Canon 38 del Código de Ética Profesional, supra.

El 11 de mayo de 2011 el licenciado Rosado Nieves contestó la querella. En lo pertinente, indicó que no tenía forma de saber el método que utilizó el testador para llegar a su oficina el día en que otorgó el testamento declarado nulo. Añadió que no impugnó la sentencia de nulidad porque no quería contravenir la voluntad de los codemandados, quienes querían evitar que

se siguiera lacerando la relación familiar. Sin embargo, aseguró que su determinación de no apelar la sentencia no significa que estuviera de acuerdo con ella. En cuanto a la declaración jurada de la Sra. Valentina Carrión Príncipe, indicó que se le presentó en medio del juicio sin notificación previa, que en las declaraciones juradas no se tiene que precisar el lugar del otorgamiento ni la hora. Alegó que se otorgó en casa del señor Carrión Cordero, pero que carece de evidencia extrínseca para probarlo, más allá de su testimonio.

El 20 de octubre de 2011 designamos a la ex jueza del Tribunal de Primera Instancia, Hon. Eliadís Orsini Zayas, como Comisionada Especial del caso. Luego de celebrar varias vistas, la Comisionada presentó su informe, que concentró principalmente en las irregularidades en la otorgación del testamento nulo y la declaración jurada de la Sra. Valentina Carrión Príncipe. Enfocó su análisis en la posibilidad de que el licenciado Rosado Nieves violara el Art. 2 de la Ley Notarial, _supra_, y los Cánones 35 y 38 del Código de Ética Profesional, _supra_.

La Comisionada recomendó que se exonerara al licenciado Rosado Nieves. Concluyó que la queja obedece a lo que la Comisionada llamó el deseo de venganza de las quejosas contra el notario, hacia quien la Comisionada entiende que transfirieron su resentimiento por las disposiciones testamentarias de su padre. Además, señaló que la tardanza en presentar la queja constituyó incuria.

Cónsono con ello, nos invita a que acojamos la incuria como defensa en los procedimientos disciplinarios contra abogados y enmendemos la Regla 14 del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, a esos propósitos.

También la Comisionada pasó juicio sobre las determinaciones de hechos del Tribunal de Primera Instancia en el caso de la anulación del testamento. Concluyó que el testador sí pudo acudir a la oficina del notario para otorgarlo, contrario a la determinación del foro de instancia al respecto. Destacó que en el expediente del caso de nulidad ante el Tribunal de Primera Instancia constan tres declaraciones juradas de los testigos de ambos testamentos abiertos, quienes reiteran que se otorgaron en las fechas, horas y lugar indicados. En cuanto al testamento anulado, concluyó que se otorgó acorde con las leyes y reglamentos aplicables a testamentos abiertos, y descartó la aplicación de la doctrina de impedimento colateral por sentencia. Llegó a esa determinación porque el estándar de prueba en los casos disciplinarios de abogados es el de prueba clara, robusta y convincente, que resulta más estricto que el de preponderancia de prueba de los pleitos civiles.

Además, la Comisionada opinó que el Tribunal de Primera Instancia no debió admitir en evidencia la declaración jurada de la Sra. Valentina Carrión Príncipe. Interpretó que, durante el juicio, el licenciado Rosado Nieves rechazó autenticarla por tratarse de una copia y no

del documento original. La Comisionada entendió que ese actuar fue correcto, a pesar de que en la copia se veía su firma y sello notarial, porque autenticar el documento hubiera significado autenticar su contenido. El Tribunal de Primera Instancia tampoco dio credibilidad al testimonio del licenciado Rosado Nieves en ese aspecto. El letrado no declaró en las vistas ante la Comisionada Especial.

Según la Comisionada, las querellantes no sufrieron daño alguno por las actuaciones del licenciado Rosado Nieves. Llegó a esa conclusión porque en una estipulación de las partes, acordaron salvaguardar los intereses del menor de edad involucrado. Sin embargo, la observación de la Comisionada no consideró que el segundo testamento hubiera impedido que las querellantes tuvieran participación en el tercio de libre disposición, que se asignaba únicamente a su hermano.

La Comisionada resaltó que las partes estipularon que no recurrirían de la determinación del Tribunal de Primera Instancia. Sin embargo, del expediente no surge que la estipulación que se recogió en la sentencia del Tribunal de Primera Instancia tuviera esa intención. Solo consta que la estipulación preservó los derechos hereditarios de un menor de edad, nieto del testador, que hubiera quedado sin herencia tras la anulación del segundo testamento. Es en la Contestación a la Querella que presentó el licenciado Rosado Nieves el 11 de mayo de 2011 que se

alegó que decidió no acudir en apelación para no perjudicar más los ya lacerados vínculos familiares y preservar los intereses del menor, que se resguardaron con la estipulación que recogió el Tribunal de Primera Instancia.

La Procuradora General presentó su Reacción al Informe de la Comisionada Especial el 4 de abril de 2013. En ese documento se opuso a que la Comisionada realizara una nueva evaluación de los hechos ya adjudicados por sentencia final y firme del Tribunal de Primera Instancia, sin que el querellado presentara prueba adicional. Insistió en que los hechos de los que surge la querella no están en controversia.

Además, la Procuradora destacó que alterar el término prescriptivo impediría a las querellantes ejercer un derecho, a pesar de haberse guiado por el ordenamiento vigente que no impone límites prescriptivos a las quejas contra abogados. Al mismo tiempo, discrepó que la queja se hubiera presentado irrazonablemente tarde, pues las quejosas alegan que aguardaban porque el Tribunal de Primera Instancia elevara los autos del caso. La Procuradora resaltó que el letrado conocía de la Sentencia del Tribunal de Primera Instancia y de la posibilidad de que el caso redundara en una queja, por lo que no estaba en posición de indefensión.

Así pues, el caso quedó sometido el 8 de abril de 2013.

II

El Art. 2 de la Ley Notarial, supra, precisa que:

El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

4 L.P.R.A. sec. 2002.

La fe pública notarial tiene un carácter dual: en la esfera de los hechos y en la esfera del derecho. "En la esfera de los hechos, ampara la exactitud de lo que el notario ve, oye o percibe sus sentidos". S. Torres Peralta, El Derecho Notarial Puertorriqueño, Edición Especial, San Juan, Publicaciones STP, Inc., 1995, sec. 1.21.

En el otorgamiento de los testamentos abiertos, la dación de fe del notario cobra particular prominencia. El Art. 649 del Código Civil exige que las formalidades del otorgamiento de un testamento abierto se celebren en un solo acto, de lo cual dará fe el notario al final del testamento. 31 L.P.R.A. sec. 2186. Eso es cónsono con el Art. 24 de la Ley Notarial, supra, que subraya la indispensabilidad de que el otorgamiento del documento

público se celebre en un solo acto cuando sean requeridos testigos instrumentales. 4 L.P.R.A. sec. 2024.

La falta de veracidad en los hechos que narra un notario es una de las faltas más graves que puede cometer, ya que la certificación de un hecho falso va en detrimento de la fe pública. In re Belén Trujillo, supra; In re Montalvo Guzmán, supra; In re Torres Olmeda, supra. Cuando un notario da fe sobre hechos que no ocurrieron en las circunstancias de las que dio fe en el documento público, incurre en una violación del Canon 35 del Código de Ética de la Profesión, supra. Ese canon exige de los abogados conducirse con sinceridad y honradez en la práctica de la profesión. Al mismo tiempo, requiere que el abogado se ajuste a la sinceridad de los hechos al redactar documentos. Íd. Reiteradamente hemos expresado que, para que se constituya una violación de este canon, es inmaterial si hubo mala fe, deliberación o la intención de engañar. In re Muñoz Fernós, 184 D.P.R. 679, 686-687 (2012); In re Nieves Nieves, 181 D.P.R. 25, 43 (2011).

De otra parte, consignar un hecho falso en un documento notarial y en contravención a la Ley Notarial de Puerto Rico, supra, constituye también una violación del Canon 38 del Código de Ética Profesional, supra. In re Belén Trujillo, supra, pág. 308; In re Torres Olmeda, supra, págs. 393-394. Ese canon es el que exige la exaltación del honor y la dignidad de la profesión y evitar, de esta forma, la apariencia de conducta impropia.

III

La ODIN y la Comisionada Especial limitaron a dos los actos sancionables que cometió el licenciado Rosado Nieves, aunque llegaron a diferentes recomendaciones. Se trata de la otorgación del testamento que declaró nulo el Tribunal de Primera Instancia y la declaración jurada de la Sra. Valentina Carrión Príncipe.

En esencia, la ODIN nos recomienda que impongamos una sanción, mientras que la Comisionada Especial nos recomienda que exoneremos. La primera se basa, principalmente, en la sentencia del Tribunal de Primera Instancia y en las alegaciones de las quejosas. La segunda se basa en el tiempo transcurrido desde la sentencia hasta la presentación de la queja, y en el quantum de prueba que se tiene que utilizar para los procedimientos disciplinarios.

Luego de examinar cuidadosamente el expediente del caso, no podemos exonerar al licenciado Rosado Nieves de las faltas que se le imputan. Hay una sentencia del Tribunal de Primera Instancia que evaluó la prueba y determinó que el segundo testamento es nulo porque el notario faltó a la fe pública. Entendemos que se puede llegar a esa misma determinación aún bajo el estándar de prueba clara, robusta y convincente. No podemos condonar una de las faltas más graves que puede cometer un notario.

En los procesos de revisión judicial, que no es la situación ante nos, los tribunales de mayor jerarquía

concedemos gran deferencia a las determinaciones de hechos del Tribunal de Primera Instancia, su apreciación sobre la credibilidad de los testigos y el valor probatorio de la evidencia que se presentó en sala. Dávila Nieves v. Meléndez Mari, 2013 T.S.P.R. 12 (2013); Rivera Menéndez v. Action Service, 185 D.P.R. 431, 448 (2012); Serrano Muñoz v. Auxilio Mutuo, 171 D.P.R. 717, 741 (2007). Por ello, los tribunales apelativos no suelen intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad del foro primario, a menos que se haya incurrido en un error manifiesto, pasión, prejuicio o parcialidad. Íd.

En el caso ante nos, la Comisionada estudió el expediente del Tribunal de Primera Instancia. El propósito era determinar si la prueba que se desfiló en el juicio sobre nulidad del testamento del señor Carrión Cordero era suficiente como para constituir violaciones éticas según el estándar aplicable, que es de prueba clara, robusta y convincente. Sin embargo, al evaluar el expediente del Tribunal de Primera Instancia, la Comisionada entró en consideraciones sobre si la prueba fue adecuadamente admitida, y dio mayor peso a las declaraciones juradas de los testigos del testamento que a la credibilidad que el juez de primera instancia dio a los testimonios que se vertieron durante el juicio.

Por su parte, el juez que atendió el caso en el Tribunal de Primera Instancia, Hon. Hiram Sánchez

Martínez, dio gran peso al demeanor del licenciado Rosado Nieves mientras testificaba ante sí. Lo calificó como evasivo y determinó que su testimonio quedó debidamente impugnado por el resto de la prueba presentada.[1] No sólo se basó en los testimonios de las quejosas, sino que consideró otra prueba, como la forma en que estaba mecanografiada la fecha, hora y lugar del otorgamiento de los dos testamentos evaluados, y concluyó que el segundo no se otorgó según se dio fe en el documento.

Aunque reconocemos el esfuerzo de la Comisionada Especial de darse a la tarea de reevaluar el expediente del caso del Tribunal de Primera Instancia, la realidad es que las determinaciones de hechos de ese foro nunca se cuestionaron ni impugnaron en los foros concernientes. No corresponde al proceso disciplinario dilucidar la idoneidad de las actuaciones del Tribunal de Primera Instancia en el juicio sobre nulidad del testamento. Esas advinieron finales y firmes. La evaluación del expediente debió limitarse a determinar si, más allá del estándar de preponderancia de prueba requerida en el pleito civil

---

[1] La sentencia del Tribunal de Primera Instancia, en la página 11 señala:

"Estamos absolutamente convencidos de que don Alfredo no salió de su residencia esa mañana y, más aún, que no fue a Río Piedras para nada. Ni siquiera el testimonio del notario autorizante nos ha persuadido de lo contrario. Lo vimos y oímos declarar, pudimos apreciar su demeanor, y en el balance más racional y justiciero que hemos podido hacer de la totalidad de la prueba, concluimos que la fe notarial por él

(continúa...)

común y ordinario, había la prueba clara, robusta y convincente requerida en los procesos disciplinarios. *Véase*, In re Caratini Alvarado, 153 D.P.R. 575, 584-585 (2001).

En ese aspecto, la sentencia del Tribunal de Primera Instancia nos convence de que ese foro tuvo ante sí la prueba clara, robusta y convincente que nos exige la imposición de una sanción disciplinaria. A través de testimonios, el Tribunal de Primera Instancia concluyó que era físicamente imposible que el testador estuviera en la fecha, lugar y hora indicados en el testamento. En ese momento no tenía su carro disponible, las personas que habitualmente lo transportaban cuando él no podía conducir se encontraban en la graduación del nieto del testador. El Sr. Carrión Cordero no acudió a la graduación porque se sentía enfermo ese día.

Además, de un análisis visual de los testamentos, el Tribunal de Primera Instancia concluyó que al primero, el del 25 de abril de 1989, se le mecanografió la fecha del otorgamiento luego de otorgado. Mientras, que en el segundo, el de 24 de mayo de 1989, se desprendía que se imprimió la hora como parte del texto original. En ese caso, no hubo inserción en fecha posterior, lo que abonó a la conclusión de nulidad.

---

brindada en el testamento del 24 de mayo de 1989, ha sido desvirtuada".

Al Tribunal de Primera Instancia se le solicitó la declaración de nulidad de los dos testamentos. Sin embargo, ese foro solo concluyó que se derrotó la presunción de veracidad de la fe notarial en el segundo. Esa determinación denota que el Tribunal de Primera Instancia ponderó cuidadosamente toda la evidencia que se presentó ante sí. Esa prueba demuestra de manera clara, robusta y convincente que la fe pública notarial no fue veraz en el segundo testamento.

En cuanto a la declaración jurada que prestó la Sra. Valentina Carrión Príncipe el 5 de junio de 1989, el Tribunal de Primera Instancia desconfió de la forma evasiva en que respondió el licenciado Rosado Nieves. Durante el juicio, ni siquiera admitió que la firma y el sello que constaban en el documento correspondieran a él, amparándose en que era una copia y desconocía dónde estaba el original.

La Comisionada Especial censuró que el Tribunal de Primera Instancia admitiera esa declaración jurada como evidencia porque el notario se negó a autenticarla. Como advertimos anteriormente, no corresponde a estos procedimientos dilucidar la admisibilidad de la evidencia en un juicio cuya sentencia no se impugna y advino final y firme. Además, la Comisionada Especial indicó que, durante el juicio, el notario se negó a reconocer su firma en el documento porque ello hubiera significado autenticar el contenido. Sin embargo, el Art. 56 de la Ley Notarial de

Puerto Rico indica que el notario "no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitima". 4 L.P.R.A. sec. 2091. Véase, además, In re Caratini Alvarado, 153 D.P.R. 575, 581 (2001).

En el caso de la declaración jurada de 5 de junio de 1989 el Tribunal de Primera Instancia tuvo ante sí el testimonio del licenciado Rosado Nieves, y el que vertió la Sra. Valentina Carrión Príncipe en otra declaración jurada de 5 de octubre de 1991. En esa segunda declaración jurada aseguró que la primera no se firmó ante el licenciado Rosado Nieves, cuya firma y sello ya constaba en el documento que su padre le pidió que suscribiera. El Tribunal de Primera Instancia hizo una adjudicación de credibilidad en cuanto a eso y, sin que se presente evidencia adicional que socave lo ya adjudicado, lo que correspondía era evaluar si esa era prueba clara, robusta y convincente para sostener una sanción ética. Concluimos que sí.

Por último, la Comisionada Especial nos invita a que enmendemos la Regla 14 del Reglamento del Tribunal Supremo para establecer un término prescriptivo para las acciones contra abogados por haber transcurrido un término irrazonable entre la sentencia del Tribunal de Primera Instancia y la queja que presentaron las quejosas. Se alega que eso evitaría que el abogado se halle sin conseguir la prueba para poder defenderse. Sin embargo,

estamos convencidos de que este no es el caso idóneo para entrar en esas consideraciones, toda vez que los hechos se derivan de una sentencia del Tribunal de Primera Instancia. El licenciado Rosado Nieves tuvo oportunidad de defenderse en ese procedimiento. Era fácilmente predecible que, en algún momento, de él podía nacer una queja.

Así pues, validamos las conclusiones del Tribunal de Primera Instancia de que el licenciado Rosado Nieves faltó a la fe pública notarial al incumplir con la unidad de acto que requiere el otorgamiento de un testamento abierto, así como por estampar su firma y sello en una declaración jurada que no se prestó ante sí.

De esta forma, el licenciado Rosado Nieves vulneró el Art. 2 de la Ley Notarial, supra. A su vez, incurrió en una violación del Canon 35 del Código de Ética Profesional, supra, pues incumplió con el deber de sinceridad y honradez que tiene todo profesional del Derecho. Además, violó el Canon 38, supra, por faltar al honor y la dignidad de su profesión con una conducta impropia.

Estas actuaciones nos llevan a concluir que el licenciado Rosado Nieves no es una persona idónea para ejercer la notaría en Puerto Rico. Por ello, determinamos suspenderle indefinidamente del ejercicio de la notaría.

IV

Por los fundamentos expuestos, suspendemos inmediata y indefinidamente al Lcdo. Ángel M. Rosado Nieves del

ejercicio de la notaría, por violar el Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 del 2 de julio de 1987, _supra_, y los Cánones 35 y 38 del Código de Ética Profesional, _supra_.

El Alguacil de este Tribunal procederá a incautarse de la obra notarial del Lcdo. Ángel M. Rosado Nieves, incluyendo su sello notarial, y deberá entregarlos a la Oficina de Inspección de Notarías para el examen correspondiente e informe a este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ángel M. Rosado Nieves                CP-2011-04

SENTENCIA

En San Juan, Puerto Rico, a 10 de julio de 2013.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, suspendemos inmediata e indefinidamente al Lcdo. Ángel M. Rosado Nieves del ejercicio de la notaría, por violar el Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 del 2 de julio de 1987, supra, y los Cánones 35 y 38 del Código de Ética Profesional, supra.

El Alguacil de este Tribunal procederá a incautarse de la obra notarial del Lcdo. Ángel M. Rosado Nieves, incluyendo su sello notarial, y deberá entregarlos a la Oficina de Inspección de Notarías para el examen correspondiente e informe a este Tribunal.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton no interviene. La Jueza Asociada señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Kolthoff Caraballo no intervinieron.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo