*In re* Heriberto Montalvo Guzmán, querellado.

*Número:* AB-2004-186 *Resuelto:* 20 de mayo de 2005

*Roberto J. Sánchez Ramos*, procurador general; *Miguel A. Ojeda Martínez*, abogado del querellado.

PER CURIAM:

I

Tenemos ante nuestra consideración una queja contra el Lcdo. Heriberto Montalvo Guzmán, por alegadamente dar fe de la comparecencia de unos otorgantes a unas escrituras cuando los comparecientes nunca se presentaron ante él.

Esta queja surge en consecuencia y como parte del caso *Antoinette Bakhos viuda de Tartak, ex parte*,(1) relacionado a asuntos de la sucesión de la familia Tartak. En este caso se dilucidaban controversias surgidas de la presentación de ciertas escrituras públicas en el Registro de la Propiedad.

El licenciado Montalvo Guzmán otorgó la Escritura Núm. 4 sobre compraventa, el 6 de noviembre de 1998, en la cual alegadamente el Sr. Rubén Rivera Pérez adquirió de la Sra. Sara Tartak, Antoinette Bakhos Sarkis de Tartak y del Sr. José Tartak Bejos, el cincuenta por ciento de una propiedad inmueble ubicada en Río Piedras por la suma de ochocientos mil dólares. El allí comprador, señor Rivera Pérez, adquirió el otro cincuenta por ciento de la propiedad del Sr. Pedro Tartak y su esposa Dalel Tartak, mediante otro negocio de compraventa, en la Escritura Núm. 17 de 19 de mayo de 1990, ante el notario público Antonio Andino. El licenciado Montalvo Guzmán otorgó

---

(1) Civil Núm. DJV91-2203 (504).

otra Escritura de Compraventa Núm. 5, también el 6 de noviembre de 1998, en la cual el señor Rivera Pérez alegadamente le vendió a Desarrolladores de Vivienda de Interés Social la misma propiedad por la suma de un millón doscientos mil dólares.(2)

El Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante Resolución de 3 de mayo de 1999, concluyó que las mencionadas Escrituras de Compraventa, la Núm. 4, otorgada ante el licenciado Montalvo Guzmán, y la Núm. 17, otorgada ante el notario público Antonio Andino, eran ilegales y no establecían derecho alguno. De dicha resolución surge que, a la luz de la prueba presentada, a la fecha del otorgamiento de la Escritura Núm. 17, ante el notario público Antonio Andino, la señora Dalel Tartak había fallecido hacía tres años.

El 12 de marzo de 2004, mediante carta, compareció el licenciado Montalvo Guzmán con su contestación a la queja de epígrafe. *Admitió que había otorgado las escrituras el 6 de noviembre de 1998 y que los otorgantes de éstas nunca comparecieron ante él, puesto que cuando las autorizó ya estaban firmadas. Expresó que aceptaba haber violado los cánones del Código de Ética Profesional y que estaba profundamente arrepentido.* Además, señaló que para la fecha de los hechos se encontraba atravesando por una fuerte crisis emocional y psíquica.

El 16 de agosto de 2004, el Procurador General sometió un informe relacionado con esta queja. En dicho informe concluye que el licenciado Montalvo Guzmán incurrió en una grave violación a la fe pública notarial —Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002— y al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.(3)

---

(2) Surge del Informe del Procurador General que estas escrituras realmente no son las Núms. 4 y 5, sino las Núms. 2 y 3, según corroborado en la copia del Índice Notarial de noviembre de 1998 del querellado.

(3) Este canon trata sobre la sinceridad y honradez.

Le concedimos al licenciado Montalvo Guzmán veinte días para expresarse sobre dicho informe. El 16 de febrero de 2005 compareció y, *una vez más, aceptó su responsabilidad*. Nos solicitó tomáramos en consideración las circunstancias personales y de salud que lo afectaban al momento de los hechos, de su depresión severa y de su estado de ánimo decaído.

II

La profesión de la abogacía está revestida de un alto interés público que requiere de una estricta observancia y reglamentación.(4) Los notarios tienen una gran responsabilidad con la fe pública notarial y una estricta obligación de cumplir cabalmente con la ley que regula sus funciones. La notaría es una función que requiere cuidado y que debe ser ejercida con sumo esmero y celo profesional, y en el despliegue de esta función, el notario está obligado a cumplir estrictamente con la Ley Notarial de Puerto Rico y con los cánones del Código de Ética Profesional, pues de lo contrario, se expone a las sanciones disciplinarias correspondientes.(5)

El Art. 2 de la Ley Notarial de Puerto Rico, *supra*, dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado a dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente

---

(4) *In re Pagán Ayala*, 115 D.P.R. 814, 815 (1984); *In re Negrón Negrón*, 163 D.P.R. 586 (2004).

(5) *In re Vera Vélez*, 148 D.P.R. 1, 6–7 (1999).

ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

Un notario público que falta a la veracidad de los hechos incurre en una de las faltas más graves que pueda cometer, ya que la certificación de un hecho falso constituye un acto detrimental a la fe pública y, por lo tanto, al Art. 2 de la Ley Notarial de Puerto Rico antes mencionado.(6) Los notarios son los funcionarios encargados de garantizar la autenticidad de las firmas hechas ante sí mediante la fe pública notarial.(7)

Cuando un notario público viola la fe pública notarial, al no exponer la veracidad de unos hechos, automáticamente viola el Canon 35 del Código de Ética Profesional, *supra*.(8) Dicho canon dispone, en lo aquí pertinente, lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> . . . . . . . .
>
> El abogado debe ajustarse a la sinceridad de los hechos al examinar testigos, al redactar affidávit u otros documentos, y al presentar causas.

Como se desprende, este canon impone a todo abogado unas normas mínimas de conducta, indispensables para preservar el honor y la dignidad de la profesión.(9) Un abogado viola este canon cuando hace constar falsamente, bajo su fe notarial, la comparecencia de unos otorgantes en una escritura o cuando afirma en ésta un hecho falso.(10)

---

(6) *In re Peña Clós*, 135 D.P.R. 590 (1994).

(7) *In re Charbonier Laureano*, 156 D.P.R. 575 (2002).

(8) *In re Aponte Berdecía*, 161 D.P.R. 94 (2004).

(9) *In re López De Victoria I*, 163 D.P.R. 1 (2004).

(10) *In re Tejada Rivera I*, 155 D.P.R. 175 (2001); *In re Martínez, Odell I*, 148 D.P.R. 49 (1999).

Hemos establecido que, para determinar la sanción disciplinaria aplicable a un abogado querellado, podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, *la aceptación de la falta y su sincero arrepentimiento*, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien, de acuerdo con los hechos.[11]

## III

El licenciado Montalvo Guzmán, admitido al ejercicio de la abogacía el 10 de enero de 1986 y a la notaría el 16 de enero de 1987, incurrió en una falta a la fe pública notarial, por lo que cometió una violación al Art. 2 de la Ley Notarial de Puerto Rico, *supra*, y al Canon 35 del Código de Ética Profesional, *supra*. Su comportamiento, independientemente de su estado de ánimo o psicológico, fue contrario a los principios éticos que gobiernan a esta comprometida profesión. No obstante, debemos darle algún crédito a la oportuna y sincera aceptación de los errores cometidos y al arrepentimiento manifestado. Aceptar la comisión de errores significativos y arrepentirse por ellos no justifica la conducta en que incurrió ni le resta méritos a la importancia de disciplinar a un abogado por incurrir en tal conducta. No obstante, puede ser una circunstancia atenuante al momento de disponer la medida disciplinaria que se vaya a imponer. El licenciado Montalvo Guzmán ha aceptado sus errores y se ha arrepentido de haberlos cometido.

Por los fundamentos antes expresados, se dicta senten-

---

(11) *In re Martínez Lloréns*, 158 D.P.R. 642 (2003); *In re Vélez Barlucea*, 152 D.P.R. 298, 310–311 (2000).

cia, en la que se decreta la suspensión indefinida e inmediata de Heriberto Montalvo Guzmán del ejercicio de la notaría en Puerto Rico. Se había ordenado, mediante Resolución de 10 de diciembre de 2004, la incautación preventiva de la obra notarial del licenciado Montalvo Guzmán. De no haberse incautado la totalidad de dicha obra, se ordena al Alguacil de este Tribunal que proceda con ésta. Se le impone al licenciado Montalvo Guzmán el deber de notificar a todos sus clientes de su presente inhabilidad de ejercer la notaría, de devolver cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos en treinta días del cumplimiento de estos deberes.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López no intervino.

