per curiam:
Una de las faltas más graves en que puede incurrir un notario es ser infiel a la veracidad de los hechos que describe en los documentos públicos que otorga. In re Belén Trujillo, 184 DPR 793, 802 (2012); In re Montalvo Guzmán, 164 DPR 806, 811 (2005); In re Torres Ol- *261 meda, 145 DPR 384, 393 (1998). Las actuaciones del Ledo. Ángel M. Rosado Nieves demuestran que violó las garantías de la fe pública notarial que dio en varios documentos públicos. Además, revelan que faltó a su deber de sinceri-dad y honradez. Por ello, determinamos suspenderle inde-finidamente de la práctica de la notaría.
I
Este caso contra el Ledo. Ángel M. Rosado Nieves surge a raíz de una queja que presentaron las hermanas Valen-tina y Carmen Lydia Carrión Príncipe el 10 de marzo de 2006. En su queja señalan que el Tribunal de Primera Ins-tancia declaró nulo un testamento de su padre, el Sr. Alfredo Carrión Cordero, como consecuencia de las actuacio-nes del notario, quien lo otorgó el 24 de mayo de 1989. Además, advirtieron que el foro primario reconoció que una declaración jurada de 5 de junio de 1989 también vul-neró la fe pública notarial. Por último, le imputaron asu-mir la representación legal de su madre, Carmen Príncipe Negrón, en una demanda el 17 de septiembre de 1991, a pesar de que el notario sabía que estaba incapacitada para administrar sus bienes.
La principal defensa del licenciado Rosado Nieves, quien respondió a la queja el 22 de mayo de 2006, fue que el tiempo transcurrido entre los hechos imputados y la queja lo ubica en un estado de indefensión. Subraya el abo-gado, admitido a la práctica de la abogacía el 10 de enero de 1986 y al de la notaría el 4 de marzo de 1986, que el retraso en presentar la queja no tiene justificación. En cuanto a los hechos, reconoció que otorgó el testamento, pero aseguró que se realizó según las circunstancias que en él se describen y que recogía el sentir del testador. Las quejosas ripostaron con otro documento, de 3 de agosto de
2007, en el que rechazaron que el testamento en disputa recogiera el sentir del testador.
*262 La Oficina de Inspección de Notarías (ODIN) rindió un informe el 28 de abril de 2010 en que recomendó la impo-sición de una sanción disciplinaria al licenciado Rosado Nieves. En su informe, ODIN describe varios documentos que ponen en duda la fe pública notarial que dio el quere-llado, entre otras denuncias de las quejosas.
El señalamiento principal versa sobre el segundo testa-mento que otorgó el señor Carrión Cordero, que el Tribunal de Primera Instancia declaró nulo el 19 de diciembre de 1995. En detalle, el 25 de abril de 1989, el señor Carrión Cordero otorgó su primer testamento abierto ante el licen-ciado Rosado Nieves. En él instituyó como herederos a sus cuatro hijos por partes iguales en cuanto a la legítima es-tricta y el tercio de libre disposición. El tercio de mejora lo heredó a su hija Evelyn Carrión Príncipe. Además, el tes-tador expresó su deseo de que una residencia se le cediera a su esposa, la Sra. Carmen Príncipe Negrón, como hogar seguro.
El segundo testamento se otorgó un mes después, el 24 de mayo de 1989, y alteró la disposición de los bienes. En este, solo el tercio de legítima estricta se dividiría en par-tes iguales entre sus cuatro hijos reconocidos. El tercio de mejora lo dividió entre la Sra. Evelyn Carrión Príncipe, a quien también designó como albacea testamentaria, y uno de sus nietos. El tercio de libre disposición lo heredó a su hijo Alfredo Carrión Príncipe. Así, el segundo testamento eliminó la participación de las quejosas en el tercio de libre disposición.
El Tribunal de Primera Instancia declaró nulo el se-gundo testamento luego de que las quejosas instaran una demanda. Concluyó que el notario mintió en la dación de fe de la unidad de acto pues, según la sucesión de hechos que construyó con los testimonios vertidos durante el juicio, era imposible que el testador acudiera al otorgamiento el día y la hora señalados. La prueba desfilada demostró que el testador se encontraba enfermo en su casa, que su vehí- *263 culo lo había prestado a una de sus hijas y que ninguna de las personas que usualmente lo transportaban estuvo dis-ponible a la hora del otorgamiento. Las respuestas y el comportamiento que exhibió el licenciado Rosado Nieves durante el juicio, entre otras cosas, no persuadieron al Tribunal. Esa sentencia no se apeló, por lo que advino final y firme.
Además del testamento anulado, la ODIN señaló el Tes-timonio Núm. 918 de 5 de jimio de 1989, que suscribió la Sra. Valentina Carrión Príncipe. En él reconoció que adeu-daba $18,000 a su padre. El 5 de octubre de 1991, la Sra. Valentina Carrión Príncipe prestó una nueva declaración jurada que rechazó que la previa se hubiera firmado frente al licenciado Rosado Nieves. Detalló que fue su padre quien le pidió que firmara el documento, que ya contenía la firma y el sello del letrado. Al respecto, la ODIN recogió la impresión del Tribunal de Primera Instancia en el sentido de que el licenciado Rosado Nieves no rebatió adecuada-mente esa imputación durante el juicio sobre la nulidad del testamento.
La ODIN también evaluó la Escritura Núm. 14 sobre Dación en Pago de 24 de abril de 1989. En ese documento, el señor Carrión Cordero afirmó ser el dueño privativo de un terreno en Loíza que dio a sus hijos Alfredo y Evelyn Carrión Príncipe, hermanos de las quejosas, como pago por servicios prestados. Sin embargo, surge del expediente que, al momento del otorgamiento, el terreno era ganan-cial, contrario a lo que afirmaron todos los comparecientes. No consta que se haya realizado un estudio de título. Fi-nalmente, ese negocio jurídico se dejó sin efecto un mes después, mediante la Escritura Núm. 16 de 23 de mayo de 1989. La ODIN se abstuvo de hacer una determinación de conducta impropia en cuanto a esta situación.
Otra situación que evaluó la ODIN se relaciona con la solicitud para que se declarase incapaz a la Sra. Carmen Príncipe, viuda del testador. El 3 de septiembre de 1991, la *264 Sra. Carmen Lydia Carrión Príncipe presentó ante el Tribunal de Primera Instancia una petición de determinación de incapacidad y nombramiento de tutor para su madre. Sus hermanos Alfredo y Evelyn Carrión Príncipe, a través de su abogado, el licenciado Rosado Nieves, pidieron inter-venir en ese procedimiento el 24 de septiembre de 1991. En su intervención, aceptaron que la Sra. Carmen Príncipe Negrón no estaba capacitada para administrar sus bienes. Sin embargo, siete días antes, el 17 de septiembre de 1991, el licenciado había instado una demanda en representa-ción de la señora Príncipe Negrón, sus hijos Alfredo y Evelyn Carrión Príncipe, y uno de sus nietos. Para ese mo-mento, no existía una declaración formal de incapacidad en cuanto a la señora Príncipe Negrón, por lo que la ODIN tampoco hizo señalamiento en esa instancia.
El 1 de septiembre de 2010 referimos el caso a la Oficina del Procurador General para que presentara la querella correspondiente, lo que sucedió el 31 de marzo de 2011. El Procurador desglosó las imputaciones en tres cargos. El primero de ellos por violar el Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 LPRA see. 2002), por faltar a la fe pública notarial. El segundo cargo imputa una violación del Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, sobre sinceridad y honradez. El tercer cargo imputa una violación del Canon 38 del Código de Ética Profesional, supra.
El 11 de mayo de 2011, el licenciado Rosado Nieves con-testó la querella. En lo pertinente, indicó que no tenía forma de saber el método que utilizó el testador para llegar a su oficina el día en que otorgó el testamento declarado nulo. Añadió que no impugnó la sentencia de nulidad por-que no quería contravenir la voluntad de los codemanda-dos, quienes querían evitar que se siguiera lacerando la relación familiar. Sin embargo, aseguró que su determina-ción de no apelar la sentencia no significa que estuviera de acuerdo con ella. En cuanto a la declaración jurada de la *265 Sra. Valentina Carrión Príncipe, indicó que se le presentó en medio del juicio sin notificación previa, que en las de-claraciones juradas no se tiene que precisar el lugar del otorgamiento ni la hora. Alegó que se otorgó en casa del señor Carrión Cordero, pero que carece de evidencia ex-trínseca para probarlo, más allá de su testimonio.
El 20 de octubre de 2011 designamos a la exjueza del Tribunal de Primera Instancia, Hon. Eliadís Orsini Zayas, como Comisionada Especial del caso. Luego de celebrar va-rias vistas, la Comisionada presentó su informe, que con-centró principalmente en las irregularidades en la otorga-ción del testamento nulo y la declaración jurada de la Sra. Valentina Carrión Príncipe. Enfocó su análisis en la posi-bilidad de que el licenciado Rosado Nieves violara el Art. 2 de la Ley Notarial de Puerto Rico, supra, y los Cánones 35 y 38 del Código de Etica Profesional, supra.
La Comisionada recomendó que se exonerara al licen-ciado Rosado Nieves. Concluyó que la queja obedece a lo que la Comisionada llamó el deseo de venganza de las que-josas contra el notario, hacia quien la Comisionada en-tiende que transfirieron su resentimiento por las disposi-ciones testamentarias de su padre. Además, señaló que la tardanza en presentar la queja constituyó incuria. Cón-sono con ello, nos invita a que acojamos la incuria como defensa en los procedimientos disciplinarios contra aboga-dos y enmendemos la Regla 14 del Tribunal Supremo, 4 LPRAAp. XXI-A, a esos propósitos.
También la Comisionada pasó juicio sobre las determi-naciones de hechos del Tribunal de Primera Instancia en el caso de la anulación del testamento. Concluyó que el tes-tador sí pudo acudir a la oficina del notario para otorgarlo, contrario a la determinación del foro de instancia al respecto. Destacó que en el expediente del caso de nulidad ante el Tribunal de Primera Instancia constan tres decla-raciones juradas de los testigos de ambos testamentos abiertos, quienes reiteran que se otorgaron en las fechas, *266 las horas y el lugar indicados. En cuanto al testamento anulado, concluyó que se otorgó acorde con las leyes y los reglamentos aplicables a testamentos abiertos, y descartó la aplicación de la doctrina de impedimento colateral por sentencia. Llegó a esa determinación porque el estándar de prueba en los casos disciplinarios de abogados es el de prueba clara, robusta y convincente, que resulta más es-tricto que el de preponderancia de prueba de los pleitos civiles.
Además, la Comisionada opinó que el Tribunal de Pri-mera Instancia no debió admitir en evidencia la declara-ción jurada de la Sra. Valentina Carrión Príncipe. Inter-pretó que, durante el juicio, el licenciado Rosado Nieves rechazó autenticarla por tratarse de una copia y no del documento original. La Comisionada entendió que ese ac-tuar fue correcto, a pesar de que en la copia se veía su firma y sello notarial, porque autenticar el documento hu-biera significado autenticar su contenido. El Tribunal de Primera Instancia tampoco dio credibilidad al testimonio del licenciado Rosado Nieves en ese aspecto. El letrado no declaró en las vistas ante la Comisionada Especial.
Según la Comisionada, las querellantes no sufrieron daño alguno por las actuaciones del licenciado Rosado Nieves. Llegó a esa conclusión, porque en una estipulación de las partes, acordaron salvaguardar los intereses del me-nor de edad involucrado. Sin embargo, la observación de la Comisionada no consideró que el segundo testamento hu-biera impedido que las querellantes tuvieran participación en el tercio de libre disposición, que se asignaba única-mente a su hermano.
La Comisionada resaltó que las partes estipularon que no recurrirían de la determinación del Tribunal de Primera Instancia. Sin embargo, del expediente no surge que la es-tipulación que se recogió en la sentencia del Tribunal de Primera Instancia tuviera esa intención. Solo consta que la estipulación preservó los derechos hereditarios de un me- *267 nor de edad, nieto del testador, que hubiera quedado sin herencia tras la anulación del segundo testamento. Es en la contestación a la querella que presentó el licenciado Ro-sado Nieves el 11 de mayo de 2011 que se alegó que decidió no acudir en apelación para no perjudicar más los ya lace-rados vínculos familiares y preservar los intereses del me-nor, que se resguardaron con la estipulación que recogió el Tribunal de Primera Instancia.
La Procuradora General presentó su reacción al In-forme de la Comisionada Especial el 4 de abril de 2013. En ese documento se opuso a que la Comisionada realizara una nueva evaluación de los hechos ya adjudicados por sentencia final y firme del Tribunal de Primera Instancia, sin que el querellado presentara prueba adicional. Insistió en que los hechos de los que surge la querella no están en controversia.
Además, la Procuradora destacó que alterar el término prescriptivo impediría a las querellantes ejercer un dere-cho, a pesar de haberse guiado por el ordenamiento vigente que no impone límites prescriptivos a las quejas contra abogados. Al mismo tiempo, discrepó que la queja se hu-biera presentado irrazonablemente tarde, pues las quejo-sas alegan que aguardaban porque el Tribunal de Primera Instancia elevara los autos del caso. La Procuradora re-saltó que el letrado conocía de la sentencia del Tribunal de Primera Instancia y de la posibilidad de que el caso redun-dara en una queja, por lo que no estaba en posición de indefensión.
Así pues, el caso quedó sometido el 8 de abril de 2013.
II
El Art. 2 de la Ley Notarial de Puerto Rico, supra, precisa:
El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las *268 leyes de los negocios jurídicos y demás actos y hechos extraju-diciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la vo-luntad de las partes, dándole forma legal, redactar las escri-turas y documentos notariales a tal fin y conferirle [s] autori-dad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original). 4 LPRA see. 2002.
La fe pública notarial tiene un carácter dual: en la esfera de los hechos y en la esfera del derecho. “En la esfera de los hechos, ampara la exactitud de lo que el notario ve, oye o percibe sus sentidos”. S. Torres Peralta, El derecho notarial puertorriqueño, edición especial, San Juan, Pubs. STP, 1995, Sec. 1.21.
En el otorgamiento de los testamentos abiertos, la dación de fe del notario cobra particular prominencia. El Art. 649 del Código Civil exige que las formalidades del otorgamiento de un testamento abierto se celebren en un solo acto, de lo cual dará fe el notario al final del testamento. 31 LPRA see. 2186. Eso es cónsono con el Art. 24 de la Ley Notarial de Puerto Rico, supra, que subraya la indispensabilidad de que el otorgamiento del documento público se celebre en un solo acto cuando sean requeridos testigos instrumentales. 4 LPRA see. 2024.
La falta de veracidad en los hechos que narra un notario es una de las faltas más graves que puede cometer, ya que la certificación de un hecho falso va en detrimento de la fe pública. In re Belén Trujillo, supra; In re Montalvo Guzmán, supra; In re Torres Olmeda, supra. Cuando un notario da fe sobre hechos que no ocurrieron en las circunstancias como las que certificó en el documento público, incurre en una violación del Canon 35 del Código de Etica de la Profesión, supra. Ese canon exige a los abogados conducirse con sinceridad y honradez en la práctica de la profesión. Al mismo tiempo, requiere que el abogado se *269 ajuste a la sinceridad de los hechos al redactar documentos. Id. Reiteradamente hemos expresado que, para que se constituya una violación de este canon, es in-material si hubo mala fe, deliberación o la intención de engañar. In re Muñoz Fernós, 184 DPR 679, 686-687 (2012); In re Nieves Nieves, 181 DPR 25, 43 (2011).
De otra parte, consignar un hecho falso en un documento notarial y en contravención a la Ley Notarial de Puerto Rico, constituye también una violación del Canon 38 del Código de Etica Profesional, supra. In re Belén Trujillo, supra, pág. 308; In re Torres Olmeda, supra, págs. 393-394. Ese canon es el que exige la exaltación del honor y la dignidad de la profesión y evitar, de esta forma, la apariencia de conducta impropia.
III
La ODIN y la Comisionada Especial limitaron a dos los actos sancionables que cometió el licenciado Rosado Nieves, aunque llegaron a diferentes recomendaciones. Se trata de la otorgación del testamento que declaró nulo el Tribunal de Primera Instancia y la declaración jurada de la Sra. Valentina Carrión Príncipe.
En esencia, la ODIN nos recomienda que impongamos una sanción, mientras que la Comisionada Especial nos recomienda que exoneremos. La primera se basa, princi-palmente, en la sentencia del Tribunal de Primera Instan-cia y en las alegaciones de las quejosas. La segunda está fundamentada en el tiempo transcurrido desde la senten-cia hasta la presentación de la queja, y en el quantum de prueba que se tiene que utilizar para los procedimientos disciplinarios.
Luego de examinar cuidadosamente el expediente del caso, no podemos exonerar al licenciado Rosado Nieves de las faltas que se le imputan. Hay una sentencia del Tribunal de Primera Instancia que evaluó la prueba y determinó *270 que el segundo testamento es nulo porque el notario faltó a la fe pública. Entendemos que se puede llegar a esa misma determinación aún bajo el estándar de prueba clara, ro-busta y convincente. No podemos condonar una de las fal-tas más graves que puede cometer un notario.
En los procesos de revisión judicial, que no es la situación ante nos, los tribunales de mayor jerarquía concedemos gran deferencia a las determinaciones de hechos del Tribunal de Primera Instancia, su apreciación sobre la credibili-dad de los testigos y el valor probatorio de la evidencia que se presentó en sala. Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013); Rivera Menéndez v. Action Service, 185 DPR 431, 448 (2012); Serrano Muñoz v. Auxilio Mutuo, 171 DPR 717, 741 (2007). Por ello, los tribunales apelativos no suelen intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad del foro primario, a menos que se haya incurrido en un error manifiesto, pasión, pre-juicio o parcialidad. íd.
En el caso ante nos, la Comisionada estudió el expe-diente del Tribunal de Primera Instancia. El propósito era determinar si la prueba que se desfiló en el juicio sobre la nulidad del testamento del señor Carrión Cordero era su-ficiente como para constituir violaciones éticas según el es-tándar aplicable, que es de prueba clara, robusta y convincente. Sin embargo, al evaluar el expediente del Tribunal de Primera Instancia, la Comisionada entró en con-sideraciones sobre si la prueba fue admitida adecuada-mente, y dio mayor peso a las declaraciones juradas de los testigos del testamento que a la credibilidad que el juez de primera instancia dio a los testimonios que se vertieron durante el juicio.
Por su parte, el juez que atendió el caso en el Tribunal de Primera Instancia, Hon. Hiram Sánchez Martínez, dio gran peso al comportamiento del licenciado Rosado Nieves mientras testificaba ante sí. Lo calificó como evasivo y de-terminó que su testimonio quedó debidamente impugnado *271 por el resto de la prueba presentada.(1) No sólo se basó en los testimonios de las quejosas, sino que consideró otra prueba, como la forma en que estaba mecanografiada la fecha, la hora y el lugar del otorgamiento de los dos testa-mentos evaluados, y concluyó que el segundo no se otorgó según se dio fe en el documento.
Aunque reconocemos el esfuerzo de la Comisionada Especial de darse a la tarea de reevaluar el expediente del caso del Tribunal de Primera Instancia, la realidad es que las determinaciones de hechos de ese foro nunca se cues-tionaron ni impugnaron en los foros concernientes. No co-rresponde al proceso disciplinario dilucidar la idoneidad de las actuaciones del Tribunal de Primera Instancia en el juicio sobre nulidad del testamento. Esas advinieron finales y firmes. La evaluación del expediente debió limitarse a determinar si, más allá del estándar de preponderancia de prueba requerida en el pleito civil común y ordinario, ha-bía la prueba clara, robusta y convincente requerida en los procesos disciplinarios. Véase In re Caratini Alvarado, 153 DPR 575, 584-585 (2001).
En ese aspecto, la sentencia del Tribunal de Primera Instancia nos convence de que ese foro tuvo ante sí la prueba clara, robusta y convincente que nos exige la impo-sición de una sanción disciplinaria. A través de testimo-nios, el Tribunal de Primera Instancia concluyó que era físicamente imposible que el testador estuviera en la fecha, el lugar y la hora indicados en el testamento. En ese mo-mento no tenía su carro disponible, las personas que habi-tualmente lo transportaban cuando él no podía conducir se *272 encontraban en la graduación del nieto del testador. El se-ñor Carrión Cordero no acudió a la graduación porque se sentía enfermo ese día.
Además, de un análisis visual de los testamentos, el Tribunal de Primera Instancia concluyó que al primero, el de 25 de abril de 1989, se le mecanografió la fecha del otorga-miento luego de otorgado. Mientras, que en el segundo, el de 24 de mayo de 1989, se desprendía que se imprimió la hora como parte del texto original. En ese caso, no hubo inserción en fecha posterior, lo que abonó a la conclusión de nulidad.
Al Tribunal de Primera Instancia se le solicitó la decla-ración de nulidad de los dos testamentos. Sin embargo, ese foro solo concluyó que se derrotó la presunción de veraci-dad de la fe notarial en el segundo. Esa determinación de-nota que el Tribunal de Primera Instancia ponderó cuida-dosamente toda la evidencia que se presentó ante sí. Esa prueba demuestra de manera clara, robusta y convincente que la fe pública notarial no fue veraz en el segundo testamento.
En cuanto a la declaración jurada que prestó la Sra. Valentina Carrión Príncipe el 5 de junio de 1989, el Tribunal de Primera Instancia desconfió de la forma evasiva en que respondió el licenciado Rosado Nieves. Durante el jui-cio, ni siquiera admitió que la firma y el sello que consta-ban en el documento correspondieran a él, amparándose en que era una copia y desconocía dónde estaba el original.
La Comisionada Especial censuró que el Tribunal de Primera Instancia admitiera esa declaración jurada como evidencia porque el notario se negó a autenticarla. Como advertimos, no corresponde a estos procedimientos diluci-dar la admisibilidad de la evidencia en un juicio cuya sen-tencia no se impugna y advino final y firme. Además, la Comisionada Especial indicó que, durante el juicio, el no-tario se negó a reconocer su firma en el documento porque ello hubiera significado autenticar el contenido. Sin em *273 bargo, el Art. 56 de la Ley Notarial de Puerto Rico indica que el notario “no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitima”. 4 LPRA sec. 2091. Véase, además, In re Caratini Alvarado, 153 DPR 575, 581 (2001).
En el caso de la declaración jurada de 5 de junio de 1989, el Tribunal de Primera Instancia tuvo ante sí el tes-timonio del licenciado Rosado Nieves, y el que vertió la Sra. Valentina Carrión Príncipe en otra declaración jurada de 5 de octubre de 1991. En esa segunda declaración ju-rada aseguró que la primera no se firmó ante el licenciado Rosado Nieves, cuya firma y sello ya constaba en el docu-mento que su padre le pidió que suscribiera. El Tribunal de Primera Instancia hizo una adjudicación de credibilidad en cuanto a eso y, sin que se presente evidencia adicional que socave lo ya adjudicado, lo que correspondía era evaluar si esa era prueba clara, robusta y convincente para sostener una sanción ética. Concluimos que sí.
Por último, la Comisionada Especial nos invita a que enmendemos la Regla 14 del Reglamento del Tribunal Supremo, supra, para establecer un término prescriptivo para las acciones contra abogados por haber transcurrido un término irrazonable entre la sentencia del Tribunal de Primera Instancia y la queja que presentaron las quejosas. Se alega que eso evitaría que el abogado se halle sin con-seguir la prueba para poder defenderse. Sin embargo, es-tamos convencidos de que este no es el caso idóneo para entrar en esas consideraciones, toda vez que los hechos se derivan de una sentencia del Tribunal de Primera Instancia. El licenciado Rosado Nieves tuvo oportunidad de defenderse en ese procedimiento. Era fácilmente prede-cible que, en algún momento, de este procedimiento podía nacer una queja.
Así pues, validamos las conclusiones del Tribunal de Primera Instancia de que el licenciado Rosado Nieves faltó a la fe pública notarial al incumplir con la unidad de acto *274 que requiere el otorgamiento de un testamento abierto, así como por estampar su firma y sello en una declaración ju-rada que no se prestó ante sí.
De esta forma, el licenciado Rosado Nieves vulneró el Art. 2 de la Ley Notarial de Puerto Rico, supra. A su vez, incurrió en una violación del Canon 35 del Código de Etica Profesional, supra, pues incumplió con el deber de sinceri-dad y honradez que tiene todo profesional del Derecho. Además, violó el Canon 38, supra, por faltar al honor y la dignidad de su profesión con una conducta impropia.
Estas actuaciones nos llevan a concluir que el licenciado Rosado Nieves no es una persona idónea para ejercer la notaría en Puerto Rico. Por ello, determinamos suspen-derle indefinidamente del ejercicio de la notaría.
IV
Por los fundamentos expuestos, suspendemos inmediata e indefinidamente al Ledo. Angel M. Rosado Nieves del ejer-cicio de la notaría por violar el Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, supra, y los Cánones 35 y 38 del Código de Ética Profesional, supra. El Alguacil de este Tribunal procederá a incautar la obra notarial del Ledo. Angel M. Rosado Nieves, incluyendo su sello notarial y deberá entregarlos a la Oficina de Inspección de Notarías para el examen correspondiente e informe a este Tribunal.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton no interviene. La Jueza Asociada Señora Fiol Matta, la Juez Asociada Señora Rodríguez Rodríguez y el Juez Asociado Señor Kolthoff Caraballo no intervinieron.

 La Sentencia del Tribunal de Primera Instancia, pág. 11 señala:
“Estamos absolutamente convencidos de que don Alfredo no salió de su residen-cia esa mañana y, más aún, que no fue a Río Piedras para nada. Ni siquiera el testimonio del notario autorizante nos ha persuadido de lo contrario. Lo vimos y oímos declarar, pudimos apreciar su demeanor, y en el balance más racional y justi-ciero que hemos podido hacer de la totalidad de la prueba, concluimos que la fe notarial por él brindada en el testamento del 24 de mayo de 1989, ha sido desvirtuada”.