EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Roxana Soto Aguilú<br>(TS-15,968) | 2019 TSPR 60<br><br>202 DPR ____ |
| --- | --- |

Número del Caso:  CP-2016-22


Fecha: 1ro de abril de 2019


Oficina del Procurador General:

      Lcda. Karla Z. Pacheco Álvarez
      Subprocuradora General

      Lcdo. Joseph Feldstein Del Valle
      Subprocurador General

      Lcda. Yaizamarie Lugo Fontanez
      Procuradora General Auxiliar

Abogado del Querellado:

      Lcdo. Carlos S. Dávila Vélez


Comisionada Especial:

      Hon. Crisanta González Seda



Materia:  Conducta Profesional – Censura enérgica por violación a los Cánones 21 y 38 del Código de Ética Profesional



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| Roxana Soto Aguilú | CP-2016-22 | |
| TS-15,968 | | |

*PER CURIAM*

En San Juan, Puerto Rico, a 1 de abril de 2019.

En esta ocasión nos corresponde determinar si la Lcda. Roxanna Soto Aguilú (licenciada Soto Aguilú o querellada) infringió los Cánones 21 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 21 y 38.

La licenciada Soto Aguilú fue admitida al ejercicio de la abogacía el 29 de agosto de 2006 y a la práctica de la notaría el 22 de septiembre del mismo año. El proceso disciplinario de epígrafe surgió como consecuencia de una queja presentada por la Sra. Carmen M. Torres Colón (señora Torres Colón o quejosa) el 28 de octubre de 2014 en la Secretaría del Tribunal Supremo[1]. Esta alegó que contrató los servicios profesionales de la licenciada Soto Aguilú para que la representara en un caso de *Divorcio* contra su esposo, el Sr. Néstor I. Torres Bonilla[2] y posteriormente, la letrada compareció en otro pleito representando al señor Torres Bonilla contra la quejosa. [3] En fin, sostuvo que la querellada incurrió en Conflicto de Interés. A continuación, exponemos los

---

[1] Queja AB 2014-419.

[2] *Carmen Torres Colón v. Néstor Torres Bonilla*, EDI 2012-1274.

[3] *Néstor I. Torres Bonilla v. Carmen M. Torres Colón,* OPM 2014-031.

antecedentes fácticos que dieron génesis a la querella de epígrafe.

I

El 19 de octubre de 2012, la señora Torres Colón, representada por la licenciada Soto Aguilú presentó una Demanda de *Divorcio* contra el señor Torres Bonilla.[4] De la Demanda surge que la pensión alimentaria de los menores procreados durante el matrimonio se fijó en el caso civil de alimentos[5], pleito al que las partes comparecieron por derecho propio y en el que se le anotó la rebeldía al señor Torres Bonilla. El 18 de enero de 2013 se celebró la Vista en su Fondo y el Tribunal de Primera Instancia ordenó la consolidación del expediente de Alimentos con el de Divorcio. Posteriormente, el 18 de enero de 2013 el foro primario declaró *Con Lugar* la Demanda de *Divorcio* que presentó la señora Torres Colón.

El 27 de agosto de 2014, la señora Torres Colón presentó una *Moción sobre Desacato*, por derecho propio, en la cual informó que el señor Torres Bonilla incumplió con los pagos de la pensión alimentaria. Así las cosas, el foro primario emitió una *Orden de Mostrar Causa* al señor Torres Bonilla y señaló una Vista de Desacato Civil a celebrarse el 6 de octubre de 2014.

Posteriormente, la licenciada Soto Aguilú presentó una moción intitulada *Relevo de Representación Legal* en la que expuso, *inter alia*, que **representó únicamente** a la señora Torres Colón en el pleito de divorcio. La querellada presuntamente no se comunicó antes de presentar el escrito con la quejosa ni le notificó copia del escrito por correo porque según alegó la querellada esta decidió entregárselo a la mano.

---

[4] *Carmen M. Torres Colón v. Néstor I. Torres Bonilla*, EDI 2012-1274.
[5] *Carmen M. Torres Colón v. Néstor I. Torres Bonilla*, EAL 2011-0483.

El 3 de octubre de 2014, el señor Torres Bonilla acudió a la oficina de la querellada para solicitar sus servicios legales. Específicamente, el señor Torres Bonilla deseaba que esta lo representara legalmente en la Vista de Desacato Civil pautada para el 6 de octubre de 2014. Originalmente el señor Torres Bonilla se presentó como Iván, que es su segundo nombre y el cual acostumbra a utilizar. Al solicitarle la citación para la Vista de Desacato Civil, la licenciada Soto Aguilú se percató que ella estaba citada para la misma Vista por haber representado a la señora Torres Colón en el pleito de divorcio. Así las cosas, esta le informó al señor Torres Bonilla que ya había solicitado autorización para renunciar la representación legal de la quejosa. Por otra parte, la querellada le indicó que comparecería a la Vista y le haría el planteamiento correspondiente al juez. Además, le aconsejó que llevara una cantidad sustancial de dinero para pagar la pensión adeudada.

El 6 de octubre del 2014 la querellada se presentó al Tribunal junto al señor Torres Bonilla donde se encontraron con la señora Torres Colón. La licenciada Soto Aguilú le dejó saber a la señora Torres Colón que esta no la estaba representando en la Vista de Desacato Civil y le informó que el señor Torres Bonilla tenía el dinero para pagar la pensión adeudada. La señora Torres Colón no expresó molestia u objeción alguna ya que esta no la había contratado ni había utilizado sus servicios luego del Divorcio.

La licenciada Soto Aguilú le informó al Tribunal que representó a la señora Torres Colón en el pleito de Divorcio. Asimismo, indicó que esta no conocía a ninguna de las partes y durante el pleito de Divorcio, se limitó a tener una relación

profesional. Añadió que recibió una notificación para comparecer a la Vista de Desacato Civil, pero que no había sido contactada por la señora Torres Colón. Por otra parte, informó al Tribunal que presentó una moción intitulada *Relevo de Representación Legal* en el pleito de Divorcio de la señora Torres Colón y que esta no había sido unida al expediente.

Así las cosas, el Tribunal preguntó sobre la probabilidad de que hubiera un Conflicto de Intereses. La licenciada Soto Aguilú indicó que le expuso dicho planteamiento al señor Torres Bonilla y este le expresó que, por su parte, no había ningún tipo de Conflicto de Interés. Añadió que, le informó al señor Torres Bonilla que comparecería a la Vista y de ser su representante esta no podía aceptar honorarios de abogado por lo que comparecería *ad honorem*. Respecto a la señora Torres Colón, adujo que le informó que representaría al señor Torres Bonilla en la Vista de Desacato Civil y que la quejosa no expresó tener ningún reparo.

La licenciada puso a disposición del Tribunal a ambas partes para que se le preguntara si existía alguna objeción. Cabe señalar que del expediente no surge que el Tribunal se dirigiera a las partes para hacer alguna pregunta en o fuera de récord. Tampoco surge que el Tribunal hiciera alguna determinación sobre el probable Conflicto de Interés.

Ante este escenario, la querellada continúo representando al señor Torres Bonilla en la Vista y solicitó que la cuenta de ASUME se auditara. El Tribunal de Primera Instancia dictó una *Orden* a ASUME a tales efectos. Señaló Vista de Seguimiento para el 14 de enero de 2015 y citó a las partes. **Respecto a la *Moción para el Relevo de Representación Legal*, el Tribunal ordenó que se localizara, la solicitud; sin embargo, no la resolvió.**

Por otra parte, en septiembre del año 2014 el señor Torres Bonilla presentó, por derecho propio, una solicitud de *Orden de Protección* ante la sala del Tribunal de Primera Instancia de Las Piedras contra la señora Torres Colón. En su solicitud incluyó una Petición de Custodia de los hijos habidos en el matrimonio con esta. Las partes fueron citadas a una vista a celebrarse el 9 de octubre de 2014. El señor Torres Bonilla solicitó los servicios legales de la querellada para dicha vista.[6]

El 9 de octubre de 2014, la licenciada Soto Aguilú compareció en representación del señor Torres Bonilla a la Vista sobre Orden de Protección. Por otra parte, la señora Torres Colón solicitó tener representación legal y una nueva fecha para la vista. El Tribunal reseñaló la vista para el 13 de noviembre de 2014. La quejosa compareció representada por el licenciado Ramón Vega González a la Vista. El señor Torres Bonilla compareció representado por la querellada. Celebrada la Vista el Tribunal aceptó el *Informe* del Departamento de la Familia que validó los señalamientos del señor Torres Bonilla contra la señora Torres Colón. Así las cosas, expidió la *Orden de Protección* y le otorgó la custodia provisional de ambos menores al padre, concediendo relaciones materno filiales supervisadas mientras la señora Torres Colón recibía tratamiento en un programa de rehabilitación.

Es importante señalar que la *Moción para el Relevo de Representación Legal* que la querellada presentó para que se le relevara de la representación legal de la señora Torres Colón no fue aceptada por el Tribunal de Primera Instancia **hasta el 12 de diciembre de 2014, es decir, luego de que la querellada hubiese representado al señor Torres Bonilla en la Vista de Desacato Civil**

---

[6] *Néstor I. Torres Bonilla vs Carmen M. Torres Colón,* OPM 2014-031.

**celebrada el 6 de octubre del 2014 y en la Vista sobre Orden de Protección celebrada el 9 de octubre de 2014.** El 3 de julio de 2015, la Corporación de Servicios Legales de Puerto Rico compareció en el caso sobre custodia e informó que estaría representando al señor Torres Bonilla.

El 6 de julio de 2015 este Tribunal ordenó a la Oficina de la entonces Procuradora General de Puerto Rico (OPG) que investigara la conducta de la querellada, auscultara posibles violaciones a Cánones de Ética y presentara el correspondiente *Informe*, lo que hizo el 22 de octubre de 2015. En su *Informe* la OPG concluyó que la querellada pudo haber infringido los Cánones 21 y 38 del Código de Ética Profesional, supra. El 23 de noviembre de 2015, la querellada presentó su *Réplica* al Informe de la Procuradora General, negó haber violado los Cánones 21 y 38 de Ética Profesional y solicitó el archivo de la queja presentada en su contra. El 10 de junio de 2016, luego de varios trámites procesales, ordenamos a la OPG a que presentara la Querella.

El 20 de diciembre de 2016, la OPG presentó Querella de epígrafe contra la licenciada Soto Aguilú y le imputaron una violación a los Cánones 21 y 38 de Ética Profesional, 4 LPRA Ap. IX, Cs. 21 y 38. El 12 de enero de 2017, la querellada presentó su Contestación a la Querella, en la que hizo una relación detallada de su participación en cada uno de los sucesos que dieron base a la Querella. Negó que hubiera incurrido en alguna violación ética y presentó varias circunstancias que considera son atenuantes.

El 11 de abril de 2018 designamos a la licenciada Crisanta González Seda como Comisionada Especial para recibir la prueba y rendir un *Informe* con las recomendaciones pertinentes. El 23 de

agosto de 2018 se celebró la *Vista Final* y el 27 de septiembre de 2018 la Comisionada Especial presentó el Informe correspondiente. Procedemos entonces a analizar las normas aplicables.

II

A.

Como primer cargo, se le imputó a la querellada haber violado el Canon 21 de Ética Profesional, *supra*, al alegadamente ostentar la representación legal de la señora Torres Colón y la representación legal simultánea del señor Torres Bonilla en asuntos sustancialmente relacionados y teniendo ambas partes intereses adversos.

En lo relativo al caso de epígrafe, el Canon 21 del Código de Ética Profesional, *supra*, establece que

> **[n]o es propio de un profesional el representar intereses encontrados.** Dentro del significado de esta regla, **un abogado representa intereses encontrados cuando, en beneficio de un cliente es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.** La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban.4 LPRA Ap. IX, C. 21. (Énfasis suplido).

Conforme a lo anterior en *In re Ortiz, Rivera*, 195 D.P.R. 122 (2016) expresamos que el Canon 21 del Código de Ética Profesional, supra, impone el deber de lealtad y fidelidad y prohíbe la representación de intereses encontrados. Además, este nos presenta varias situaciones que deben de ser evitadas. Así, indicamos que

> [e]n primer lugar, no se debe aceptar la representación legal cuando esta pueda verse afectada por las

expectativas o los intereses personales del abogado o de la abogada ... Asimismo, **se debe evitar tanto aceptar la representación legal simultánea de dos clientes con intereses contrapuestos**, como aceptar la representación legal de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior. *In re Ortiz, Rivera*, supra, págs. 132–33.

El Canon 21 establece tres (3) situaciones principales que todo abogado debe evitar: (i) aceptar la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior, o conocido como *representación sucesiva adversa*; (ii) **aceptar la representación simultánea de dos clientes con intereses encontrados, o conocido como *representación simultánea de clientes***; y (iii) aceptar la representación legal conociendo que su juicio profesional puede verse afectado por sus intereses personales. Véanse: *In re Aponte Duchesne*, 191 DPR 247, 256 (2014); *In re Báez Genoval*, 175 D.P.R. 28, 36 (2008).

B.

Como segundo cargo, a la querellada se le imputó haber violado el Canon 38 de Ética Profesional, *supra*, al asumir representación legal de clientes a pesar de que ello implicaba un real o potencial Conflicto de Intereses. En lo pertinente, el Canon 38, *supra*, dispone que "[e]l abogado deberá de esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia." 4 LPRA Ap. IX, C. 38.

En virtud de tal disposición, viola el Canon 38, *supra*, todo abogado que incurra en apariencia de conducta impropia, ya que se estaría quebrantando el deber de exaltar el honor y la dignidad de la profesión legal.

En *In re Báez Genoval*, supra, un letrado incurrió en conducta antiética que provocó la infracción a los Cánones 21 y 38 del Código de Ética Profesional, *supra*. Este Tribunal tuvo la oportunidad de delimitar la relación entre los Cánones 21 y 38 del Código de Ética Profesional, *supra* y resolvimos que "**cuando un abogado asume una representación simultánea de clientes o una representación sucesiva adversa que resulta en un real o potencial conflicto de intereses, incurre en una conducta que viola los Cánones 21 y 38 del Código de Ética Profesional, supra.**" *In re Báez Genoval*, supra, págs. 38-39. (Énfasis suplido).

C.

Los Comisionados Especiales son designados por este Tribunal con la encomienda de investigar, de recibir y evaluar la prueba, así como de dirimir la credibilidad de cualquier prueba testifical presentada. *In re Morales Soto*, 134 DPR 1012 (1994). Este ocupa el rol de un juez de instancia.

Es menester recordar que este Tribunal no está obligado a aceptar el *Informe* del Comisionado Especial en un procedimiento disciplinario. Sin embargo, debido al rol que desempeña el Comisionado Especial, sus determinaciones fácticas merecen nuestra mayor deferencia. Este es quien atiende la Querella, evalua y aquilata la prueba, para luego rendir un Informe con sus determinaciones de hechos y conclusiones de derecho. De ordinario este Tribunal sostendrá las determinaciones de hecho del Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. Véanse: *In re Ortiz, Rivera,* 195 D.P.R. 122, 134 (2016); *In re Guzmán Guzmán*, 181 DPR 495, 511, (2011).

En su informe, la Comisionada Especial determinó que la

querellada infringió los Cánones 21 y 38 del Código de Ética Profesional, *supra*. Sin embargo, señaló que como atenuante se consideren varios factores que pesan a favor de la querellada.

III

Nos corresponde determinar si la querellada incurrió en los cargos imputados de acuerdo con los Cánones 21 y 38 del Código de Ética Profesional, *supra*. A la querellada se le imputó haber representado simultáneamente a la señora Torres Colón y al señor Torres Bonilla, a pesar de que ostentaban intereses adversos en asuntos relacionados.

Este foro ha señalado que una situación de representación simultánea adversa ocurre cuando un abogado **tiene que defender, en beneficio de un cliente, aquello a lo cual normalmente debería de oponerse, conforme sus obligaciones con otro cliente**. *In re Aponte Duchesne*, 191 DPR 247, 256 (2014). (Énfasis suplido).

En *In re Torres Viera*, 170 DPR 306 (2007), este foro discutió el análisis que se debe de realizar al enfrentarse ante una situación de representación simultánea adversa. Expusimos que la prohibición del Canon 21 será activada cuando exista una relación de abogado-cliente dual. Señalamos que no se puede traer como defensa que los clientes hayan consentido a la representación simultánea. Añadimos que, ante un Conflicto de Intereses, los abogados están obligados a renunciar a ambas representaciones. *In re Torres Viera*, supra, págs. 311-12.

Como consecuencia, no se tiene que probar una violación al principio de confidencialidad, solo se debe de probar que hubo una relación de abogado y cliente y que la misma resultó adversa y está sustancialmente relacionada. *In re Gordon Menéndez*, 183 DPR 628, 640 (2011).

En primer lugar, la querellada representó legalmente a la quejosa en el pleito de Divorcio el cual fue consolidado con el de Alimentos. Posteriormente, la querellada aceptó representar al señor Torres Bonilla en la Vista de Desacato y en la Vista de Orden de Protección. Ello, a pesar de que: (1) el señor Torres Bonilla era parte demandada en el pleito de Divorcio donde la querellada fungió como abogada de la señora Torres Colón y (2) el Tribunal de Primera Instancia no había aceptado su renuncia a la representación legal de la señora Torres Colón en el caso del Divorcio. En segundo lugar, surge de los hechos que ambas partes, representadas por la querellada, tenían intereses adversos que a su vez provocaban un conflicto real. Ante esta situación, la querellada no debió de haber aceptado representar al señor Torres Bonilla.

En fin, concluimos que la querellada incurrió en conducta que contraviene los Cánones 21 y 38 del Código de Ética Profesional, *supra*.

Ahora procedemos a determinar el tipo de sanción disciplinaria que se le debe de imponer, recordando los siguientes factores: (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. *In re Mulero Fernández*, 174 DPR 18, 37 (2008); *In re Montalvo Guzmán*, 164 DPR 806 (2005); *In re Quiñones Ayala*, 165 DPR 138 (2005); *In re Vélez Barlucea*,

152 DPR 298, págs. 310-311 (2000); *In re Padilla Rodríguez*, 145 DPR 536 (1998).

Conforme a esto, se ha evaluado la conducta de la querellada y compartimos el criterio con la Comisionada Especial sobre los atenuantes a considerar. Primeramente, la querellada goza de buena reputación en su comunidad. Segundo, esta es la primera falta de la querellada. Tercero, no surge que la actuación de la querellada haya causado daño a las partes. Cuarto, no hay prueba de que la actuación de la querellada haya sido motivada por un lucro indebido o propósito que no fuera lícito. Quinto, no estamos ante un patrón de conducta intencional, sino estamos ante una situación aislada. Por último, ante preguntas de la Comisionada Especial, la querellada expresó que no repetiría este tipo de conducta que dio lugar a este procedimiento.

IV

Por los fundamentos antes expuestos censuramos enérgicamente a la licenciada Roxanna Soto Aguilú. Asimismo, le apercibimos de la obligación de tener siempre presente los deberes de lealtad y fidelidad al evaluar este tipo de situaciones.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Roxana Soto Aguilú

TS-15,968

CP-2016-22

SENTENCIA

En San Juan, Puerto Rico, a 1 de abril de 2019.

Por los fundamentos antes expuestos censuramos enérgicamente a la licenciada Roxanna Soto Aguilú. Asimismo, le apercibimos de la obligación de tener siempre presente los deberes de lealtad y fidelidad al evaluar este tipo de situaciones.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo